840 So.2d 955 (2002)
THE FLORIDA BAR, Complainant,
v.
Saul CIMBLER, Respondent.
No. SC01-116.
Supreme Court of Florida.
November 14, 2002.
Rehearing Denied March 13, 2003.
John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, Tallahassee, FL; and Randolph Max Brombacher, Bar Counsel, Miami, FL, for Complainant.
Richard Baron of Baron and Cliff, Miami, FL, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical misconduct by attorney Saul Cimbler. We have jurisdiction. See art. V, § 15, Fla. Const. The Florida Bar petitions for review, challenging the referee's recommended discipline of a ninety-day suspension. For the reasons *956 expressed below, we disapprove the referee's recommended discipline and impose a one-year suspension to be followed by three years' probation.
The Bar filed a three-count complaint against Cimbler alleging misconduct arising from Cimbler's representation of three clients. After a final hearing on both guilt and discipline, the referee made the following factual findings.

COUNT I
In November 1998, Cimbler was hired by Jorge Ruiz Del Vizo and his wife Gladys Ruiz Del Vizo, to represent them in the sale of their property in Key Biscayne. The buyer was represented by attorney Ralph R. Crabtree, whose title commitment was relied upon by the parties at the closing. The closing statement and all closing documents were executed on November 18, 1998. On that same date, the buyer transferred $408,994.61 to Cimbler's trust account. Cimbler agreed to disburse the funds as indicated in the closing documents, which included payment of the real estate taxes and payment of the documentary stamps, surtax, and recording fees. Cimbler was also required to record the warranty deed in the Miami-Dade County public records. Although Cimbler claims that he directed his assistant to complete the post-closing matters, the warranty deed was never recorded and the real estate taxes were never paid.
As a result, Crabtree was unable to issue the final title insurance policy for the buyer in a timely or proper manner. After the closing, for over a twelve-month period, Crabtree attempted to contact Cimbler's office in order to obtain a copy of the recorded deed, which Cimbler's office promised would be forthcoming. Crabtree was also unsuccessful in his attempts to locate Cimbler through his Florida Bar address or last known business address. In July 1999, Crabtree had a title search performed on the property and learned that the deed had never been recorded. After attempting to have Cimbler rectify his failure to record the deed, Crabtree had a new warranty deed executed by the Ruiz Del Vizos on January 4, 2000, and recorded in Miami-Dade's public records. Crabtree had to personally supply the funds for the documentary stamps, surtax, recording fees, and real estate taxes, all of which had been previously remitted to Cimbler as part of the funds to be disbursed at the time of closing and recording of the deed. Sometime thereafter, Cimbler was notified that the deed he had prepared was never recorded and the real estate taxes had not been paid. Cimbler ultimately had to reimburse Crabtree for the monies he advanced to perfect the closing and Cimbler did so on or about April 7, 2000.

COUNT II
In March 1995, Cimbler was hired by Antonio Dominguez to prepare a contract for the purchase of real property located in Marathon, Florida. Dominguez remitted $2000 to Cimbler as a deposit for the property and Cimbler prepared a contract in furtherance of the purchase. Sometime in May 1995, it became apparent that the sale of the property would not take place. Dominguez, acting on Cimbler's advice, remitted $800 to Cimbler in order to file a suit for specific performance and breach of contract, which Cimbler filed that same month. Prior to filing an answer, opposing counsel filed a motion to dismiss and for judgment on the pleadings. A hearing was initially set for January 18, 1996, but was moved up to November 14, 1995. Although Cimbler was provided timely and proper notice of the November 14 hearing date by opposing counsel, he did not appear and the judge entered a final judgment on the pleadings in favor of the defendant. Further, Cimbler failed to establish *957 excusable neglect for not attending the hearing.
Cimbler filed a motion to set aside the final judgment, which the judge denied with leave to refile the motion pursuant to Florida Rule of Civil Procedure 1.540. In September 1996, Cimbler filed a second motion to set aside the judgment under rule 1.540. Opposing counsel served a notice of hearing on the motion set for August 5, 1997, and served a notice for attorney's fees and costs. Cimbler failed to attend the hearing and the judge entered an order in favor of the defendant, as well as an attorney's fees judgment against Dominguez for $7294 plus interest. Cimbler first became aware of the judgment in February or March 1998, but did not timely remit funds to Dominguez and has not provided any restitution to Dominguez, in spite of having said he would do so.
As a result of the judgment, a lien has been placed on property owned by Dominguez, who has hired additional legal counsel in regard to these matters. Dominguez's new attorney sent correspondence to Cimbler to resolve this matter but restitution had not occurred as of the date of the referee's report. In addition, Cimbler did not return the $2000 deposit for the purchase of the real property from his trust account until Dominguez's new attorney requested it.

COUNT III
Sometime in 1994 or 1995, Drs. Todd and Corey Narson hired Cimbler to file a civil lawsuit against their then landlord, regarding a commercial lease dispute in Miami-Dade County. The gravamen of the suit concerned whether the Narsons, as tenants, could obtain a certificate of use that would enable them to use the property for commercial purposes. The lease at issue was terminated in January 1997. Sometime in May or June 1997, the Narsons contacted Cimbler and discharged him on another unrelated matter. At no time after this communication did the Narsons have any further substantive communications or correspondence with Cimbler in regard to their civil lawsuit. Sometime in the later part of 1997, Cimbler, having maintained his status as counsel of record, failed to inform the Narsons that they were to appear so the opposing party could take their deposition. On December 18, 1997, Cimbler attended a hearing where the court entered an order requiring that the Narsons make themselves available for deposition within thirty days or they would be sanctioned. However, Cimbler failed to notify the Narsons and they never appeared for deposition. As a result, the court entered a final judgment on or about April 16, 1998, in favor of the defendants for $58,400 plus attorney's fees of $15,391.25 and costs of $940.17, totaling $74,731.42. On or about August 4, 1999, the Narsons were informed by their bank that a writ of garnishment had been attached to their account based on the final judgment.

ALL COUNTS
With respect to all counts, the referee found that Cimbler "was previously under contract with FLA, Inc. [(Florida Lawyers Assistance Program)] and was under the Psychiatric care of Dr. Stephen Kahn, M.D. from June 1993 through 1998." Cimbler has been diagnosed with both recurrent and severe depression as well as avoidant personality disorder. In addition, during the same time period, Cimbler exhibited signs of diminished psychological, social, and occupational functioning that affected his ability to practice law and may not have been apparent to his clients. However, Cimbler neither declined to render his services nor withdrew from his representation of the Ruiz Del Vizos, Dominguez, or the Narsons. Lastly, the referee *958 found that Cimbler failed to maintain his Florida Bar address or a public phone number, and made deliberate efforts to make himself unavailable and difficult to contact.

RECOMMENDATIONS AS TO GUILT AND DISCIPLINE
Based on the foregoing findings of fact, the referee recommended that Cimbler be found guilty of the following rule violations: as to count I, Rules Regulating the Florida Bar 1-3.3 (stating that "[e]ach member shall promptly notify the executive director of any changes" in mailing address and business telephone) and 4-1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client."); as to count II, rules 1-3.3, 4-1.4(a) ("A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."), and 4-1.4(b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."); and as to count III, rules 4-1.3, 4-1.4(a), 4-1.4(b), and 4-1.16(a)(2) ("[A] lawyer shall ... withdraw from the representation of a client if ... (2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client....").
As to discipline, the referee concluded that the presumptively appropriate sanction was suspension under Florida Standard for Imposing Lawyer Sanctions 4.4 (Lack of Diligence), which provides:
4.42 Suspension is appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or
(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.
The referee found that the evidence presented at the hearing did not establish, in certain instances, clear and convincing proof of willful, intentional conduct. Therefore, the referee concluded that Cimbler's "negligent handling of the three (3) matters in question either occurred due to simple communication lapses, errors in calendaring legal hearings, or possibly failures to attend hearings which were duly noticed, yet not communicated to [Cimbler] by staff or opposing counsel." The referee further found that although Cimbler's lack of diligence and failure to communicate with his clients "created a situation ripe for malfeasance," several facts showed a set of procedural mistakes not entirely attributable to Cimbler.
In aggravation, the referee found that Cimbler (1) had a prior discipline in 1994 based on similar findings of emotional problems and mental health impairments, resulting in a ninety-day suspension and three years' probation, see Florida Bar v. Cimbler, 659 So.2d 1089 (Fla.1995) (unpublished order); (2) had committed multiple offenses; and (3) had shown indifference in making restitution to Dominguez. See Fla. Stds. Imposing Law. Sancs. 9.22(a), (d), (j). In mitigation, the referee found that Cimbler (1) made a timely good faith effort to make restitution or to rectify the consequences of his misconduct;[1] (2) made full and free disclosure or had a cooperative attitude during the proceedings; (3) *959 had good character or reputation; (4) had physical or mental disabilities or impairment; (5) had demonstrated interim rehabilitation; and (6) had shown remorse. See Fla. Stds. Imposing Law. Sancs. 9.32(d), (e), (g)-(h), (j), (l).
The referee recommended that Cimbler be suspended from the practice of law for ninety days and be required to pay the Bar's costs. The referee further recommended that Cimbler be placed on probation for five years following reinstatement and that during this time, at his own expense, Cimbler should be supervised by an attorney acceptable to The Florida Bar, monitored by FLA, Inc., and required to submit annually to an independent psychiatric evaluation performed by a licensed psychiatrist chosen by the Bar. In addition, the referee recommended that Cimbler be required to immediately enroll in The Florida Bar's Law Office Management Assistance Service (LOMAS) and maintain enrollment during the probationary period, or as deemed necessary by the executive director of LOMAS. Last, the referee recommended that Cimbler be required to remit $8000 to Dominguez as restitution for any outstanding debts arising from the liens placed on Dominguez's property. In making this recommendation, the referee focused on the significant mitigating factors and concluded that Cimbler "perceives and recognizes the future consequences if he fails to conduct himself with professionalism to practice in the future, and knows that indeed this may truly be his last opportunity."
The Bar seeks review of the referee's recommended discipline, arguing that a ninety-day suspension is inappropriate due to the similar and repetitive nature of Cimbler's misconduct in this case. Specifically, the Bar argues that the facts of this case warrant a three-year suspension.

ANALYSIS
Neither the Bar nor Cimbler challenges the referee's findings of fact or recommendations of guilt, which we approve without further discussion. In reviewing a referee's recommendation of discipline, this Court has a broader scope of review than that afforded to findings of fact because the Court "bears the ultimate responsibility of ordering the appropriate sanction." Florida Bar v. Elster, 770 So.2d 1184, 1188 (Fla.2000). Moreover, the three purposes of discipline are as follows: "[T]he judgment must be fair to society, it must be fair to the attorney, and it must sufficiently deter other attorneys from similar misconduct." Florida Bar v. Brown, 790 So.2d 1081, 1089 (Fla.2001).
We conclude that the referee's recommended discipline does not fulfill these three purposes. In order to protect the public, a suspension of greater than ninety days is required, especially in light of the seriousness of the acts of neglect, the cumulative nature of the misconduct, and Cimbler's previous disciplinary history. In addition, we conclude that a ninety-day suspension does not have a reasonable basis in existing caselaw, and we therefore disapprove the recommended discipline. See Florida Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999) (this Court "will not secondguess a referee's recommended discipline as long as that discipline has a reasonable basis in existing caselaw").
In recommending a ninety-day suspension the referee found that Florida Bar v. Maier, 784 So.2d 411 (Fla.2001), was "strikingly similar" to the instant case.[2] *960 Although we agree that Maier is similar to the instant case in that the referee found extensive mitigation, we also conclude that Maier is distinguishable in two important ways. First, the misconduct in Maier involved only one client and occurred over a period of one year (1995-1996), see id. at 412, whereas Cimbler's misconduct involved three clients and occurred over a number of years (1995-1999). We have consistently stated that "[t]his Court deals more harshly with cumulative misconduct than it does with isolated acts." Florida Bar v. Nesmith, 707 So.2d 331, 333 (Fla. 1998); see also Florida Bar v. Bern, 425 So.2d 526, 528 (Fla.1982) (stating that "cumulative misconduct of a similar nature should warrant an even more severe discipline than might dissimilar conduct").
Second, when imposing discipline, "this Court considers the respondent's previous history and increases the discipline where appropriate." Florida Bar v. Morrison, 669 So.2d 1040, 1042 (Fla.1996). In Maier, this Court found a sixty-day suspension appropriate where the attorney had a prior disciplinary history consisting of two admonishments and a thirty-day suspension. See 784 So.2d at 413. In this case, Cimbler has previously received a ninety-day suspension resulting from similar emotional problems and mental health impairments followed by a three-year probationary period. Rather than be rehabilitated during that period of time, Cimbler proceeded to commit multiple acts of client neglect arising from similar emotional problems and mental health impairments. This reinforces the necessity for a longer period of suspension that will require Cimbler to demonstrate his fitness before being readmitted,[3] even on a probationary basis.
The facts of the three counts in this case, considered together, show that Cimbler engaged in a long-term pattern of multiple client neglect. In the Ruiz Del Vizo case, the client neglect spanned the course of an entire twelve-month period of time. We have made clear that even where there has been no finding of intentional misrepresentation or fraud, "[f]ailing to represent one's client zealously, failing to communicate effectively with one's client, and failing to provide competent representation are all serious deficiencies." Florida Bar v. Roberts, 689 So.2d 1049, 1051 (Fla.1997); see also Florida Bar v. Schilling, 486 So.2d 551, 552 (Fla.1986) ("Confidence in, and proper utilization of, the legal system is adversely affected when a lawyer fails to diligently pursue a legal matter entrusted to that lawyer's care. A failure to do so is a direct violation of the oath a lawyer takes upon his admission to the bar."). Specifically, we have stated:
[A]n attorney's consideration of his or her client's interests and communication with the client at reasonable times in response to the client's inquiries are a vital and necessary part of the attorneyclient relationship. We expect and require this of members of The Florida Bar and will not hesitate to impose discipline upon Florida attorneys who do not fulfill these obligations to their clients.
*961 Florida Bar v. Roberts, 770 So.2d 1207, 1209 (Fla.2000). Although we appreciate Cimbler's showing of remorse and the significant mitigation found by the referee in this case, we conclude that the serious and cumulative nature of Cimbler's misconduct, especially in light of his prior suspension, requires more severe discipline than recommended.
Other cases involving multiple acts of lack of diligence support this conclusion. See Florida Bar v. Centurion, 801 So.2d 858 (Fla.2000) (one-year suspension warranted for an attorney who was found guilty of failing to act with reasonable diligence on matters affecting five clients but had no prior disciplinary history); Florida Bar v. Roberts, 770 So.2d 1207 (Fla.2000) (ninety-one-day suspension warranted for an attorney who failed to keep a client reasonably informed, failed to explain the matter to the client to the extent reasonably necessary to allow the client to make an informed decision, had a prior disciplinary history, including a ninety-day suspension, and where the referee found that the attorney was suffering from personal or emotional problems);[4]Florida Bar v. Brakefield, 679 So.2d 766 (Fla.1996) (six-month suspension warranted for an attorney who was found guilty of various acts of client neglect and had two prior disciplinary actions resulting in an admonishment and a public reprimand); Florida Bar v. Morrison, 669 So.2d 1040 (Fla.1996) (one-year suspension warranted for an attorney who failed to act with diligence, failed to keep the client reasonably informed, failed to comply with requests for information, and had prior discipline for similar conduct); Florida Bar v. Winderman, 614 So.2d 484 (Fla.1993) (one-year suspension warranted for an attorney who failed to communicate with a client and who failed to pursue a claim that resulted in a dismissal with prejudice and an order taxing attorney's fees and costs to the client).
The Bar contends that the caselaw supports a three-year suspension in this case. We disagree. The cases cited by the Bar to support its argument are distinguishable because they contain no discussion of mitigation, which the referee found to be significant in the present case. See Florida Bar v. Elster, 770 So.2d 1184 (Fla. 2000); Florida Bar v. King, 664 So.2d 925 (Fla.1995); Florida Bar v. Provost, 323 So.2d 578 (Fla.1975); Florida Bar v. Schneiderman, 285 So.2d 392 (Fla.1973).

CONCLUSION
Considering all of the circumstances in this case, we conclude that a one-year suspension followed by a term of three years' probation is appropriate.[5] We approve all other aspects of the referee's recommended discipline but specifically require that during the term of probation, Cimbler be supervised by an attorney chosen by The Florida Bar.
Accordingly, Saul Cimbler is hereby suspended from the practice of law for one year effective, nunc pro tunc, July 29, 2002,[6] and thereafter until he makes restitution *962 to Dominguez in the amount of $8000. Following his reinstatement, Cimbler shall be placed on probation for three years with the conditions set forth in the referee's report. Specifically, Cimbler shall, at his own expense, be supervised by an attorney chosen by The Florida Bar, monitored by FLA, Inc., and required to submit annually to an independent psychiatric evaluation performed by a licensed psychiatrist chosen by the Bar. In addition, Cimbler shall enroll in LOMAS and maintain enrollment during the probationary period, or as deemed necessary by the executive director of LOMAS. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from Saul Cimbler in the amount of $11,736, for which sum let execution issue.
It is so ordered.
ANSTEAD, C.J., SHAW, WELLS, PARIENTE, LEWIS and QUINCE, JJ., and HARDING, Senior Justice, concur.
NOTES
[1] Specifically, the referee found that in the Ruiz Del Vizo case, Cimbler made the trust account disbursements in order to complete the post-closing accounting; in the Dominguez case, Cimbler attempted to have the judgment on the pleadings set aside; and in the Narson case, Cimbler acted in good faith and was not solely responsible for the adverse outcome.
[2] In Maier, the attorney stipulated to violating rules 4-1.3 (failure to act with reasonable diligence and promptness in representing a client), 4-1.4 (failure to keep a client reasonably informed about the status of a matter and promptly comply with requests for information, and failure to explain a matter to the extent reasonably necessary to permit a client to make informed decisions about the representation), and 4-8.4(g) (failure to respond to any inquiry by a disciplinary agency when such agency is conducting an investigation into the lawyer's conduct). See 784 So.2d at 412.
[3] See R. Regulating Fla. Bar 3-5.1(e) (stating that "[a] suspension of more than 90 days shall require proof of rehabilitation and may require passage of all or part of the Florida bar examination").
[4] The referee in Roberts recommended a six-month suspension to run concurrently with a ninety-day suspension imposed in another case. Because the previous suspension had terminated prior to the Court's decision, the Court imposed a ninety-one day suspension to require proof of rehabilitation prior to reinstatement, which was the referee's intent. See 770 So.2d at 1209.
[5] The referee recommended five years' probation. However, under Rule Regulating the Florida Bar 3-5.1(c) a set term of probation cannot exceed three years.
[6] On May 30, 2002, we issued an order suspending Cimbler, effective thirty days from that date and until further order of the Court. We subsequently granted Cimbler's motion for thirty additional days to comply with our order. Accordingly, Cimbler has been suspended from the practice of law since July 29, 2002.