661 So.2d 1207 (1995)
THE FLORIDA BAR, Complainant,
v.
William T. CHARNOCK, III, Respondent.
No. 81857.
Supreme Court of Florida.
October 26, 1995.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Carlos E. Torres, Bar Counsel, Orlando, for complainant.
James Martin Brown of the Law Offices of James Martin Brown, Brooksville, for respondent.
PER CURIAM.
This matter is before the Court on respondent's petition for review of a referee's report in a Florida Bar disciplinary proceeding. The referee recommended that respondent William T. Charnock III be suspended from the practice of law for a period of ninety days with automatic reinstatement as provided in rule 3-5.1(e) of the Rules Regulating The Florida Bar. We have jurisdiction. Art. V, § 15, Fla. Const.
After a hearing, the referee made the following findings of fact. Respondent represented a Dutch consortium, Pelycado Onroerend Goed B.V., that owned vacation rental properties in Hernando County. Respondent was not only the consortium's legal counsel, but he also maintained a power of attorney with the right to negotiate and enter into lease agreements for these properties.
*1208 Shortly after the consortium purchased the Hernando County property, Castle Pools filed a mechanic's lien against one of the properties. Respondent, representing the consortium, sent Castle Pools a letter advising it that the lien was invalid. Nevertheless, eight months later, Castle Pools commenced a foreclosure action on the lien. Neither respondent nor the consortium had notice of this action because Castle Pools used section 48.181, Florida Statutes (1991), or the "long arm statute" to effect service of process. The court subsequently entered summary judgment in favor of Castle Pools. The property was then auctioned at a judicial sale on March 19, 1992, and a certificate of title was issued eleven days later.
Inadvertently, on March 31, 1992, respondent became aware of the foreclosure proceedings. He then notified the consortium, which instructed respondent to represent it. On April 1, 1992, respondent filed motion to quash service of process, motion to set aside foreclosure sale, and motion to deny purchase or possession. On the same day, the court, on its own motion, entered a stay of the proceedings. After several motions and pleadings were filed and a failed attempt at mediation, the court, on July 13, 1992, denied the consortium's motions.[1] On July 15, 1994, the court issued a writ of possession.
By July 15, respondent was aware of the court's order denying the motions. With the consortium's authorization, respondent retained appellate counsel to prosecute an appeal of the order of July 13. It was in discussions with appellate counsel that respondent became aware of Florida Rule of Civil Procedure 1.580(b).[2] In order to receive the protections from the rule, respondent procured a tenant for the property through an oral agreement. The referee found that despite respondent's attempts to shift the responsibility to appellate counsel for the decision to produce a tenant, the decision was respondent's alone. The tenant completed an affidavit averring that the tenant was entitled to possession of the property. Charnock's secretary, relying on Charnock's identification of the tenant, notarized the affidavit. The tenant, however, never took actual possession of the property.
The referee found that the agreement between Charnock and the tenant complied with the requirements of rule 1.580(b); that respondent and the tenant had a valid oral contract; and that even though he was not in actual possession, the tenant was in constructive possession of the property. Consequently, the tenant had rights in the property. Further, the referee found that while the identification process was less than ideal, there was no ethical violation surrounding the affidavit.
However, the referee found that Charnock acted unethically in procuring a tenant, entering into the lease, and directing and securing the affidavit of the tenant for the purpose of utilizing rule 1.580 to delay the transfer of actual possession pursuant to the writ of possession. Respondent's creation of a tenant relationship had no substantial purpose other than to embarrass, delay, or burden a third person. The referee found respondent's conduct was both deceitful and prejudicial to the administration of justice. Additionally, by testifying untruthfully that another attorney advised him to procure a tenant in an attempt to shift the blame for his conduct away from himself, respondent acted unethically.
*1209 The referee concluded that Charnock had violated the following Rules Regulating The Florida Bar: 3-4.3 (standards of professional conduct); 4-4.4 (engaging in conduct with no substantial purpose other than to embarrass, delay, or burden a third person); 4.8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and 4-8.4(d) (engaging in conduct prejudicial to the administration of justice).[3] The referee considered Charnock's prior disciplinary record, which included one prior admonishment for minor misconduct and his age, twenty-nine years old, and recommended that he be suspended from the practice of law for ninety days with automatic reinstatement at the end of the period. See R.Regulating Fla.Bar 3-5.1(e). The referee also assessed costs against Charnock in the amount of $1,521.37. Charnock petitions for review of the findings and recommendations of guilt and of the recommendation of discipline.[4]
A referee's findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. Florida Bar v. Rue, 643 So.2d 1080 (Fla. 1994). If the referee's findings are supported by competent, substantial evidence, then this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee. Florida Bar v. MacMillan, 600 So.2d 457, 459 (Fla. 1992). The party contending that the referee's findings of fact and conclusions as to guilt are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions. Florida Bar v. Miele, 605 So.2d 866, 868 (Fla. 1992).
Based upon our review of the record, we find that it supports the referee's findings of fact and recommendations of guilt and that Charnock has not met this burden. We agree with the referee that Charnock's actions were a fraud on the court in an effort to frustrate the transfer of possession of the property. Instead of following the appropriate appellate procedures, Charnock tried to protect his client by using a rule of civil procedure to delay the transfer of possession. We find that Charnock's actions went beyond the boundaries of zealous advocacy of the Rules Regulating The Florida Bar and inhibited the proper administration of justice.
Additionally, the record supports the referee's finding that Charnock acted unethically by testifying untruthfully. In attorney disciplinary proceedings, the referee is in a unique position to assess the demeanor and credibility of the lawyer being disciplined. See Florida Bar v. Rood, 622 So.2d 974 (Fla. 1993). At the hearing, Charnock testified that it was upon the direct advice of appellate counsel that he put someone in possession of the property. This is in direct conflict with the affidavit testimony from appellate counsel, who stated that she never advised Charnock to seek out tenants to gain the protection of rule 1.580. When later confronted with this affidavit, Charnock contradicted his former testimony and stated that appellate counsel only introduced him to rule 1.580, and he decided on his own to complete the affidavit and put a tenant in the property. Given his conflicting testimony, we find that the referee did not abuse his discretion by finding that Charnock was untruthful in his testimony. Accordingly, we approve the referee's recommendation of guilt concerning these violations.
Based on his findings, the referee recommended that Charnock be suspended from the practice of law for ninety days. While the Bar does not challenge this sanction, Charnock argues that a commensurate penalty for his actions would be a public reprimand. In reviewing the referee's recommendation for discipline, our scope of review *1210 is somewhat broader than our review of the factual findings because the Supreme Court ultimately has the responsibility to order an appropriate sanction. Florida Bar v. Lawless, 640 So.2d 1098 (Fla. 1994). The sanction resulting from a Bar disciplinary action must serve three purposes: the judgment must be fair to society; it must be fair to the attorney; and it must be severe enough to deter other attorneys from similar misconduct. Id.
We agree with the referee that the gravity of Charnock's actions warrants a suspension. However, while Charnock is guilty of serious misconduct, in light of the involved circumstances of the lien foreclosure, testimony from several witnesses that he has a good reputation in the legal community, and respondent's past grievance record, we believe that a thirty-day suspension is an appropriate sanction to further the purposes of a disciplinary action. See Florida Bar v. Burkich-Burrell, 659 So.2d 1082 (Fla. 1995) (attorney who sought to blame non-lawyer and refused to acknowledge responsibility for false information in interrogatories given thirty-day suspension in light of the unique facts of the case and mitigating factors present); Florida Bar v. Poplack, 599 So.2d 116 (Fla. 1992) (attorney who lied to a police officer given thirty-day suspension in light of his prior disciplinary record and mitigating evidence); Florida Bar v. Richardson, 591 So.2d 908 (Fla. 1991) (attorney who sought frivolous lawsuit in an attempt to relitigate an issue that had failed decisively numerous times given sixty-day suspension in light of his current suspension from the same set of facts); Florida Bar v. Anderson, 538 So.2d 852 (Fla. 1989) (lead attorney who misrepresented facts to the court and who failed to correct the misrepresentation when brought to his attention given thirty-day suspension).
In conclusion, we adopt the referee's findings of fact and approve the recommendations as to guilt. However, we find that the referee's disciplinary recommendation, a ninety-day suspension, is not warranted under the unique facts of this case. Accordingly, Charnock is hereby suspended from the practice of law for a period of thirty days. The suspension will be effective thirty days from the filing of this opinion so that Charnock can close out his practice and protect his clients' interests. If Charnock notifies this Court in writing that he is no longer practicing and does not need thirty days to close out his practice, this Court will enter an order making suspension effective immediately. Charnock will not accept new business from the date of this opinion until the suspension is completed. Judgment is entered for The Florida Bar against William T. Charnock III for costs in the amount of $1,521.37, for which sum let execution issue.
It is so ordered.
GRIMES, C.J., and OVERTON, KOGAN and HARDING, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion, in which ANSTEAD, J., concurs.
SHAW, J., dissents.
WELLS, Justice, concurring in part and dissenting in part.
I concur that there is sufficient evidence in the record to sustain the referee's findings of guilt that Charnock violated the Rules Regulating The Florida Bar by invoking the protections of rule 1.580(b) to delay the transfer of possession of the property. However, I do not believe the record supports the referee's conclusion that Charnock's testimony was untruthful. As the majority correctly states, the sanction resulting from a bar disciplinary action must be fair to society, fair to the attorney, and severe enough to deter other attorneys from similar misconduct. Majority op. at 1209-10. Consequently, I dissent as to the thirty-day suspension and believe a public reprimand is an appropriate sanction to further these goals.
Respondent was placed in an extraordinary situation in this complicated episode. He represented a Dutch consortium which had lost its property with an assessed value of $85,614 and a market value of over $100,000 in a foreclosure proceeding based upon a $3,000 lien. Not only did the circuit court find that the sale price, $18,200, was unconscionable, but the district court of appeal determined that respondent's client did not *1211 have proper notice of the foreclosure. See Pelycado Onroerend Goed B.V. v. Ruthenberg, 635 So.2d 1001 (Fla. 5th DCA 1994). My view of what respondent did in obtaining the affidavit was that he attempted to get an oral hearing before the circuit court whose procedures had denied his client an oral hearing.[5] While I agree that respondent stepped over the bounds of proper advocacy in this instance, in such a situation, that boundary is elusive. Moreover, my reading of respondent's testimony and the affidavit of appellate counsel does not support the referee's conclusion that respondent's testimony was untruthful. Therefore, I do not believe, in view of the totality of the circumstances, that more than a public reprimand is an appropriate sanction.
Finally, I am also concerned about the conduct of counsel whose firm represented both the lienor and the purchaser at the foreclosure sale. I realize that the firm obtained a written waiver of conflict of interest in respect to that representation. However, that does not obviate the fact that the members of that law firm represented a lienor in a foreclosure sale in which another client of the firm bought the property for an unconscionably low price. That law firm pursued the foreclosure without obtaining the proper service of process upon the owner of the property even though the firm's client, the lienor, had received a certified letter from respondent advising it that the lien was invalid. This letter gave both the lienor and his counsel actual notice that this foreign owner had legal counsel in Hernando County; however, the firm instead proceeded to foreclosure sale with defective service through the long-arm statute and with no notice to the owner or the owner's local counsel. It appears to me that the sum of the conduct of the lawyers of that law firm who participated in the foreclosure was not in accord with the standards required of Florida Bar members. I do not recommend discipline for those lawyers, but I do caution those lawyers against such future conduct in accord with Canon 3D of the Florida Code of Judicial Conduct. See In re Code of Judicial Conduct, 656 So.2d 926 (Fla. 1995).
Accordingly, I would approve the referee's findings of guilt, in that respondent's actions in employing rule 1.580 were unethical. However, I would disapprove the referee's findings that Charnock testified untruthfully. I dissent to the thirty-day suspension imposed by the majority, as I find a public reprimand to be a proper sanction in this case.
ANSTEAD, J., concurs.
NOTES
[1] In Pelycado Onroerend Goed B.V. v. Ruthenberg, 635 So.2d 1001 (Fla. 5th DCA 1994), the district court found that Castle Pools failed to strictly comply with the requirements of sections 48.161 and 48.181, Florida Statutes (1991), and set aside the foreclosure sale.
[2] Florida Rule of Civil Procedure 1.580(b) states:

If a person other than the party against whom the writ of possession is issued is in possession of the property, that person may retain possession of the property by filing with the sheriff an affidavit that the person is entitled to possession of the property, specifying the nature of the claim. Thereupon the sheriff shall desist from enforcing the writ and shall serve a copy of the affidavit on the party causing issuance of the writ of possession. The party causing issuance of the writ may apply to the court for an order directing the sheriff to complete execution of the writ. The court shall determine the right of possession in the property and shall order the sheriff to continue to execute the writ or shall stay execution of the writ, if appropriate.
[3] The referee recommended that the respondent be found not guilty of violating the following Rules of Professional Conduct: 4-1.3 (acting with reasonable diligence in representing a client); 4-3.3(a) (making false statement of material fact or law to a tribunal); 4-3.4(b) (not fabricating evidence); 4-4.1 (truthfulness in statements to others); 4-5.3 (responsibilities regarding nonlawyer assistants); 4-8.4(a) (violating the rules of professional conduct); and 4-8.4(b) (committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer).
[4] Charnock does not challenge the imposition of costs against him.
[5] I do not intend my statement here to discourage circuit courts from procedures in which the courts rule on motions on the basis of written submissions. However, in this instance, the record reflects that an oral hearing should have been held since the trial judge upheld the foreclosure sale of property for an unconscionable price in a case in which there was an allegation of insufficiency of service of process and a complete lack of notice to the property owner. A trial judge should not allow procedures under which motions are ruled upon on the basis of written submissions to make the trial judge inaccessible to counsel for the parties.