955 So.2d 535 (2007)
THE FLORIDA BAR, Complainant,
v.
Shelley Goldman MAURICE, Respondent.
No. SC04-700.
Supreme Court of Florida.
April 12, 2007.
*536 John F. Harkness, Jr., Executive Director and Kenneth L. Marvin, Director of Lawyer Regulation, The Florida Bar, Tallahassee, FL, and Alan Anthony Pascal, Bar Counsel, The Florida Bar, Fort Lauderdale, FL, for Complainant.
Shelley Goldman Maurice, pro se, Boynton Beach, FL, for Respondent.
PER CURIAM.
We review a referee's report regarding alleged ethical breaches by Shelley Goldman Maurice. We have jurisdiction. See art. V, § 15, Fla. Const. We approve the referee's findings of fact and conclusions as to guilt. We disapprove the recommended discipline of a two-year suspension *537 and impose in its stead a ninety-day suspension.

Factual and Procedural Background
The Florida Bar filed a one-count complaint against Maurice, alleging that Maurice engaged in unethical conduct in administering a probate estate. Maurice admitted several of the factual allegations of the complaint, denied others, and denied violating any of the rules with which she was charged. After a hearing, the referee filed his report with the Court. The referee found that Maurice prepared a quitclaim deed for a client, Helen Spelker, in November 1998, which transferred ownership of her condominium to her son, Gerard Spelker, and her grandson, William Spelker, but reserved to Helen Spelker a life estate in the condominium. The quitclaim deed was duly recorded in the public record, making Gerard and William Spelker vested remaindermen.
Several months later, in August 1999, Maurice prepared a new will for Helen Spelker. The will purported to bequeath the condominium and the rest of her belongings to Gerard and William Spelker, and to William's mother, Pamela Spelker, to be divided equally among them. The will also required the heirs to sell the condominium to Arthur Oliveri (Oliveri), Helen Spelker's neighbor and caretaker, for not less than $38,000.
Helen Spelker died in April 2001, without revoking the quitclaim deed to the condominium. The bulk of her estate was exempt or transferred upon her death, making the opening of an estate unnecessary. The heirs hired Maurice to probate the estate and to handle the proper disposition of the property. Without advising the heirs of the quitclaim deed making Gerard and William Spelker the full owners of the condominium upon Helen Spelker's death or that no estate was necessary, Maurice opened formal estate proceedings. Maurice's judgment regarding the necessity of an estate was clouded by her expressed concern for Helen Spelker's caretakers.
Maurice further advised the heirs that a trust should be created for William Spelker, who was a minor, so that proceeds from the sale of the condominium could be placed in trust. The provision in the will requiring the heirs to establish a trust also named Maurice as trustee. Maurice's actions created a conflict of interest between herself and the heirs and delayed the sale of the condominium.
The referee concluded that Maurice violated Rules Regulating the Florida Bar 4-1.1 (failing to provide competent representation to a client), 4-1.3 (failing to act with reasonable diligence and promptness in representing a client), 4-1.4(a) (failing to keep a client reasonably informed about the status of a matter and to promptly comply with reasonable requests for information), 4-1.7(b) (representing a client when the lawyer's exercise of independent professional judgment may be materially limited by the lawyer's responsibilities to another client, to a third person, or the lawyer's own interest), and 4-3.2 (failing to make reasonable efforts to expedite litigation consistent with the interests of the client). These violations were alleged in the Bar's complaint. In addition, the referee found Maurice violated rule 4-8.4(a) (violating or attempting to violate the Rules of Professional Conduct).
The referee did not make any findings as to whether Maurice violated several rules with which she had been charged, specifically rules 4-1.4(b) (failing to explain a matter to the extent reasonably necessary to permit the client to make informed decisions), 4-1.5(a) (entering into an agreement for, charging, or collecting an illegal, prohibited, or clearly excessive fee), 4-8.4(c) (engaging in conduct involving dishonesty, *538 fraud, deceit, or misrepresentation), and 4-8.4(d) (engaging in conduct that is prejudicial to the administration of justice). In effect, this is a finding that the Bar failed to present clear and convincing evidence that Maurice violated these rules.
With regard to discipline, the referee found two aggravating factors: (1) vulnerability of the victim and (2) substantial experience in the practice of law. The referee found the sole mitigating factor of absence of a prior disciplinary record. The referee recommended a two-year suspension, proof of completion of continuing legal education (CLE) programs entitled Practicing with Professionalism, Basic Probate and Guardianship, and Ethics Seminar, and reimbursement of the Bar's costs.
Maurice challenges several of the referee's factual findings, conclusions of guilt, and the recommendation of a two-year suspension.

Factual Findings
Maurice takes issue with the referee's finding that she opened probate proceedings when it was unnecessary to do so, that she misrepresented to the heirs the need to open probate proceedings, and that she caused a delay in the closing for the sale of the condominium owned by Gerard and William. She argues that the Bar failed to prove intent and that the record fails to establish intent.
The party contending that the referee's findings of fact are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings. Fla. Bar v. Carlon, 820 So.2d 891, 898 (Fla.2002). Maurice testified that she prepared a quitclaim deed for Helen Spelker before she prepared Helen Spelker's will. The quitclaim deed, which was introduced into evidence, transferred ownership of the condominium to Gerard and William Spelker.
Maurice testified that Helen Spelker wanted Gerard and William Spelker to have her condominium and did not want her other son or her daughter to have it or anything else. The quitclaim deed was prepared and filed to transfer ownership of the condominium. The quitclaim deed passed remainder interests in the condominium to Gerard and William Spelker when it was completed.
When Helen Spelker died, her life estate ended and Gerard and William Spelker became full owners of the condominium. Not only was there no need for the condominium to be passed through the estate, passing it through the estate was a nullity. It was no longer Helen Spelker's condominium to bequeath. Because Maurice prepared the quitclaim deed and knew the deed had been recorded and never changed before Helen Spelker's death, she knew it was not an estate asset.
Maurice's justification for treating the condominium as an estate asset was that she wanted to ensure the disinherited children could not challenge Gerard and William Spelker's ownership of the condominium. Maurice testified as follows:
The condominium went through the estate process for protection of creditors because we wanted to make sure that  There were two family members that were rather irate that they had not been in the estate, so we were attempting to protect the condominium as homestead property.
And then there was  and the will directs that the condominium, except for real estate which is presently put in convenience the name of myself and my son, Eric Spelker and William Spelker, everything else would go by rights of survivorship.[1]

*539 And the bills for the estate which were to be paid out of the sale of the proceeds of the property . . . (inaudible).
So it was our duty to make sure that it went through the estate so it could be sold and protected from claims of creditors.
It is clear that the referee did not accept this explanation. A referee's assessment of a witness's credibility is reviewed for abuse of discretion. Fla. Bar v. Charnock, 661 So.2d 1207, 1209 (Fla.1995).
At least two other possible reasons exist for Maurice to open probate and treat the condominium as an estate asset  (1) to earn fees as the estate's administrator; or (2) to ensure that Oliveri would be given the right of first refusal to buy the condominium from the new owners, Gerard and William Spelker. The referee did not find that Maurice opened probate to generate fees. Nor did he find that Maurice violated rule 4-1.5(a) (prohibiting an attorney from entering into an agreement for, charging, or collecting an illegal, prohibited, or clearly excessive fee).
The second possible motive, to ensure that Oliveri was given the right of first refusal, is supported by the findings. The referee found that Maurice's judgment about the need for an estate "was clouded by her expressed concern for Helen Spelker's caretakers" and that her opening an estate placed her "in conflict with the heirs of the estate who sought her counsel after Helen Spelker passed." He concluded her conduct had violated rule 4-1.7(b) (prohibiting a lawyer from representing a client when the lawyer's exercise of independent professional judgment may be materially limited by the lawyer's responsibilities to another client, a third person, or by the lawyer's own interest).
Here, there were two possible inferences to be drawn about Maurice's motives for opening an estate and including the condominium as an estate asset when she knew the condominium already belonged to Gerard and William Spelker. Either one would have resulted in the violation of at least one of the rules charged. The referee obviously rejected one inference, but found the other. In addition, Maurice's own testimony that she was trying to ensure that Oliveri was given the opportunity to buy the condominium supports the referee's conclusion that her desire conflicted with her duties toward the heirs under the will.
We conclude that competent, substantial evidence supports the referee's findings.

Conclusions of Guilt
Maurice also challenges the referee's conclusions that she violated rules 4-1.1 (competent representation) and 4-1.8 (representing a client with a conflict of interest). "A referee's findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record." Fla. Bar v. Brown, 905 So.2d 76, 80 (Fla.2005) (quoting Fla. Bar v. Wohl, 842 So.2d 811, 814 (Fla.2003)). "Absent a showing that the referee's findings are clearly erroneous or lacking in evidentiary support, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee." Fla. Bar v. Wohl, 842 So.2d 811, 814 (Fla.2003) (quoting Fla. Bar v. Sweeney, 730 So.2d 1269, 1271 (Fla.1998)).
The referee found that Maurice violated rules 4-1.1, 4-1.3, 4-1.4(a), 4-1.7, 4-3.2, and 4-8.4(a). Significantly, Maurice was neither charged with violating nor did the referee conclude that she violated rule 4-1.8. Maurice may have meant to contest the referee's conclusion that she violated rule 4-1.7.
*540 The evidence and factual findings support the referee's conclusion that Maurice violated rules 4-1.1 and 4-1.7(b). Maurice's belief that the condominium could be treated as an estate asset although it had previously been deeded to Gerard and William Spelker is sufficient to establish a violation of rule 4-1.1. See generally Fla. Bar v. Batista, 846 So.2d 479 (Fla.2003) (holding that an attorney violated the competence rule by failing to determine the probable outcome in his clients' cases within a reasonable time and failing to communicate the unavailability of a result to his clients). The referee found that probate proceedings were unnecessary, as most of Helen Spelker's property was either exempt or transferred upon her death. Maurice failed to explain this to the heirs. Maurice opened an estate in an attempt to ensure that Oliveri was given the opportunity to purchase the condominium from Gerard and William Spelker. She did not tell Pamela Spelker or her attorney that the ownership of the condominium had been transferred to Gerard and William in November 1998 and she did not provide a copy of the quitclaim deed she had prepared. The referee found that Maurice's judgment regarding the necessity of an estate was clouded by her expressed concern for Helen Spelker's caretakers, one of whom was Oliveri. These actions establish a violation of rule 4-1.7(b) in that her desire to ensure that Gerard and William Spelker gave Oliveri a chance to purchase the condominium conflicted with her duty to her clients, Helen Spelker's heirs.
Maurice has failed to meet her burden of proving that the referee's conclusions that she violated rules 4-1.1 and 4-1.7(b) are clearly erroneous or lacking in evidentiary support. Accordingly, we approve the referee's conclusions of guilt.

Aggravating and Mitigating Factors
Maurice argues that the referee failed to find several mitigating factors, including: (1) no prior disciplinary history;[2] (2) Maurice is a self-starter who put herself through law school while working at a law firm and set up her own practice two years after law school; (3) the complaining party did not pay any money to Maurice and did not lose any during the course of Maurice's representation; (4) she paid the Bar's costs within two weeks of the referee's decision; (5) she completed all required CLE credits during her reporting cycle and has never been in violation of the CLE requirements; (6) she has always taken more CLE than necessary; (7) she has conducted a seminar on real estate transactions; and (8) she is a chairperson and has been a chairperson of the local bar association's real estate committee for the past four years. According to Maurice, the referee also failed to consider the mitigating factor that Maurice made a timely good-faith effort to make restitution or to rectify the consequences and there was no monetary loss to the complaining parties.
The Bar asserts that there is no basis in standard 9.3 of the Florida Standards for Imposing Lawyer Sanctions for the additional mitigating factors that Maurice claims exist and that the referee correctly found that the only mitigating factor extant here is the fact that Maurice has no prior disciplinary record.
A referee's findings of mitigation and aggravation, like other factual findings, carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. Fla. Bar v. Arcia, 848 So.2d 296 (Fla. 2003).
*541 Some of the factors Maurice identifies could possibly relate to the mitigating factors identified in standard 9.3, as follows: (1) the absence of a dishonest or selfish motive (the complaining party did not pay any money to Maurice and did not lose any during the course of Maurice's representation); (2) a timely good-faith effort to make restitution or to rectify the consequences of misconduct (she paid the Bar's costs within two weeks of the referee's decision; she completed all required CLE credits during her reporting cycle and has never been in violation of the CLE requirements); or (3) character or reputation (Maurice is a self-starter who put herself through law school while working at a law firm and set up her own practice two years after law school; she has always taken more CLE than necessary; she has conducted a seminar on real estate transactions; and she is a chairperson and has been a chairperson of the local bar association's real estate committee for the past four years).
Maurice does not expressly tie these facts to any of the mitigating factors. Even if these "facts" are interpreted as relating to the mitigating factors identified above, Maurice has failed to demonstrate that the referee's failure to find that these mitigating factors applied in this case was clearly erroneous or without support in the record. We therefore approve the referee's findings regarding aggravating and mitigating factors.

Recommended Sanction
The referee recommended a two-year suspension, various courses of continuing legal education offered by the Bar, and payment of the Bar's costs. Maurice argues that the recommendation of a two-year suspension is not supported by caselaw or the standards. We agree and disapprove that recommendation.
The Court's scope of review in reviewing a referee's recommendation of discipline is broader than that afforded to the referee's findings of fact because it is ultimately the Court's responsibility to order the appropriate sanction. Fla. Bar v. Miller, 863 So.2d 231, 235 (Fla.2003); Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla. 1989); see also art. V, 15, Fla. Const. Generally, however, we will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing caselaw and the Florida Standards for Imposing Lawyer Sanctions. Fla. Bar v. Brown, 905 So.2d 76, 83-84 (Fla.2005); Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
The referee cited no standards to support his recommendation of a suspension in this case, but some standards do apply. See Fla. Stds. Imposing Law. Sancs. 4.12 (suspension is appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury); 4.42 (suspension is appropriate when a lawyer knowingly fails to perform services for a client and causes injury or potential injury or when a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury); 4.52 (suspension is appropriate when a lawyer engages in an area of practice in which the lawyer knowingly lacks competence, and causes injury or potential injury to a client); 4.62 (suspension is appropriate when a lawyer knowingly deceives a client and causes injury or potential injury).
As the standards do not suggest the appropriate length of a suspension, the Court examines caselaw to determine whether the referee's recommendation of a two-year suspension has a reasonable basis. The referee did not cite to any cases in support of his recommendation. The *542 cases cited by the Bar in its brief, Florida Bar v. Cimbler, 840 So.2d 955 (Fla.2002); Florida Bar v. Jordan, 705 So.2d 1387 (Fla.1998); and Florida Bar v. Theed, 246 So.2d 745 (Fla.1971), support suspension as the appropriate sanction, but also demonstrate that a two-year suspension is too harsh.
In Cimbler, we suspended an attorney for one year, followed by three years' probation, for neglecting to perform post-closing activities for a real estate transaction, failing to attend a hearing in a suit for specific performance, failing to notify his clients of their depositions, and other instances of neglect in three different cases. The referee found three aggravating factors: prior discipline for similar misconduct (ninety-day suspension and three years' probation); multiple offenses; and indifference to restitution as to a specific client. The referee found six mitigating factors: timely and good-faith efforts to make restitution or to rectify the consequences of her misconduct; full and free disclosure in the disciplinary proceedings; reputation for good character; physical or mental disability; interim rehabilitation; and remorse.
In Jordan, we suspended the attorney for one year for failing to file an amended complaint within the twenty-day deadline in a civil suit; failing to return numerous phone calls from his co-counsel and his client; failing to respond to a show cause order from the trial court as to why the suit should not be dismissed for lack of prosecution, which resulted in the suit's dismissal; failing to advise his co-counsel or his client of the suit's dismissal; failing to seek reinstatement of the suit; and failing to advise his client to seek independent legal representation before attempting to negotiate with her to privately settle any claim she might have had against him for legal malpractice. The attorney had been previously disciplined four times, the fourth resulting in a ninety-one-day suspension. The last three of the four prior discipline cases resulted from similar misconduct.
In Theed, we suspended an attorney for one year for improperly handling the assets of an estate, including using estate funds for his own personal use; failing to administer the estate properly; failing to account to the parties whom he represented, ignoring their request for information, ignoring the request of their attorney, and failing to act properly in all respects as an attorney and executor. The attorney had repaid the estate, before the imposition of discipline, for the estate funds he had used.
The misconduct of the attorneys in these three cases was similar, but more egregious than Maurice's. Maurice has been a member of the Bar for over two decades and has no prior discipline. Maurice's actions resulted in the heirs and true owners of the condominium having to wait several months to obtain what was rightfully theirs, but she did not profit from it.[3] Rather, she seems to have been motivated by a genuine but misguided desire to fulfill what she believed were Helen Spelker's true wishes for the disposition of her property. According to her brief, she has already reimbursed the Bar for its costs and has already taken the CLE courses recommended by the referee.
Accordingly, based on the caselaw discussed above imposing one-year suspensions for more egregious misconduct of a repetitive nature, we conclude that the *543 two-year suspension recommended by the referee is not reasonably supported by the caselaw. We disapprove that recommendation and instead suspend Maurice for ninety days. The other conditions recommended by the referee are approved.

Conclusion
Based on the foregoing, we approve the referee's factual findings and conclusions as to guilt, but disapprove the referee's recommended sanction of a two-year suspension. We approve the other recommended conditions concerning continuing legal education and reimbursement of the Bar's costs.
Shelley Goldman Maurice is hereby suspended from the practice of law for ninety days. The suspension will be effective thirty days from the filing of this opinion so that Maurice can close out her practice and protect the interests of existing clients. If Maurice notifies this Court in writing that she is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Maurice shall accept no new business from the date this opinion is filed until her suspension is completed.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Shelley Goldman Maurice in the amount of $1,399.00, for which sum let execution issue.
It is so ordered.
WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, C.J., concurs in result only.
NOTES
[1] Eric is Gerard Spelker's middle name.
[2] Despite Maurice's argument, the referee did find this mitigating factor.
[3] The Bar's complaint alleged Maurice violated rule 4-1.5(a) (entering into an agreement for, charging, or collecting an illegal, prohibited, or clearly excessive fee), but the referee did not find a rule 4-1.5(a) violation.