MAX N. TOBIAS, JR., Judge.
I,The plaintiffs/appellants, Linda and Harry Hoerner, M.D., appeal from a judgment rendered in favor of the defendants/appellees, Beulah Title and Allstate Insurance Company (hereinafter collectively referred to as “Ms. Title”). After reviewing the record and applicable law, we affirm the judgment.
The Hoerners have owned and resided at 1511 Killdeer Street, New Orleans, for over 25 years. Their neighbor is Ms. Title, whose backyard is directly behind theirs. During Hurricane Katrina, the Hoerners’ backyard brick wall, pool, and landscaping were damaged by trees in Ms. Title’s backyard.
The Hoerners filed suit against Ms. Title and her insurer for the repairs to their property, alleging that Ms. Title was liable under La. C.C. art. 2317.1. Ms. Title argued that the trees were not defective and she is entitled to the defense of force maj-eure.
The matter came to trial on 29 January 2007 in the First City Court for the City of New Orleans. After hearing testimony and reviewing the evidence, the trial | ¡¡court rendered judgment in favor of Ms. Title. Written reason were not given by the court or requested by the Hoerners.
The Hoerners have assigned two errors for review. First, they argue that the trial court erred in finding that Ms. Title’s trees were not defective. In addition, they contend that the trial court erred in applying the defense of force majeure. In response, the defendants contend that the trial court correctly rendered judgment in their favor and that the Hoerners’ claims are extinguished by subrogation.
The Hoerners maintain that, because the trial court did not issue reasons for judgment, this court should review the evidence and the law. We review factual findings under the clearly wrong/manifestly erroneous standard, while conclusions of the law are reviewed de novo. Because the judgment does not indicate the theory upon which it is based, we apply both standards of review.
The testimony from the Hoerners indicates that they have had problems with Ms. Title’s pine trees and other foliage *219 along their brick wall since 1991. Dr. Hoerner testified that Ms. Title allowed him to trim the trees back to the property line every time he sought permission. On many occasions, the Hoerners removed branches from Ms. Title’s trees that were hanging over the brick wall. Ms. Title’s son testified that Ms. Title also had the trees trimmed or permitted them to be trimmed. On one occasion, Ms. Title removed an oak tree from her backyard at the Hoerners’ request.
The Hoerners do not allege that the trees in question are defective through disease or otherwise. The pictures entered into evidence show that the trunks of |sthe trees were blown over by the hurricane; the damage was not caused by branches hanging over the wall. The Hoerners did not present any independent evidence that the trees fell due to lack of maintenance or improper trimming.
The Hoerners filed suit alleging that Ms. Title is strictly liable for the damages they suffered pursuant to La. C.C. art. 2317.1, which states:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Under article 2317.1, in order to establish liability for damage caused by a defective thing, the plaintiff must demonstrate that the owner of the thing knew, or should have known, in the exercise of reasonable care of the defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that the owner failed to exercise such reasonable care. Caples v. USAA Insurance Co., 00-2513, p. 3 (La.App. 1 Cir. 12/28/01), 806 So.2d 148, 150.
The Hoerners have admitted that the trees were healthy. However, they argue that the trees were defective because they were neglected and overgrown, and placed too close to the brick wall. However, the cases cited, by the Hoerners discussing tree maintenance and/or location involve damaged and/or diseased trees. For example, in Brown v. Williams, 36,863, p. 8 (La.App. 2 Cir. 7/31/03), 850 So.2d 1116, 1123, the court held:
j4The defendants acknowledged that during their custody of the tree, a period of more than 25 years, they did not perform any maintenance of the tree whatsoever. They did not take the step of painting over the spot where the limb had broken off ten years earlier and apparently had not even pruned the branches of this large oak tree. Defendants accepted the benefits of the tree, but refused to act to provide minimal care for the tree or to assess the health of the tree, despite the risk of significant harm to their neighbor or themselves if the tree fell due to disease or weather conditions. Based upon the particular circumstances of. this case, we cannot .say the trial court was clearly wrong in finding that the defendants should have known of the tree’s defective condition in the exercise of reasonable care and could have prevented this incident with ordinary maintenance.
The instant case does not involve a total lack of maintenance or diseased trees. Thus, under the facts presented in the matter before us, Brown does not support the Hoerners’ position.
*220 In Greene v. Fox Crossing, Inc., 32,774, pp. 4-5 (La.App. 2 Cir. 3/1/00), 754 So.2d 339, 343, the court stated:
The Greenes countered that the magnitude of the risk and the likelihood of harm posed by the defective tree limb was great. The tree in question was located beside a paved walkway that ran through the common ground. Greene was stuck [sic] by the limb while occupying a swing only two feet from the walkway. The surroundings of the swing were described as being near a playground where children played and people often walked. In the Greenes’ view, even a cursory, periodic inspection by grounds keepers would have identified the dead limb, which could have been removed at negligible cost.
Thus, the court affirmed the jury’s judgment in favor of the plaintiffs. Again, the facts in the instant case are clearly distinguishable from those in Greene because the limbs of Ms. Title’s trees were not dead or diseased; the limbs themselves did not cause the Hoerners’ damages.
| jjBased on the evidence in the record, we do not find that Ms. Title’s trees were defective for lack of maintenance or location. The trial court was presented with conflicting evidence on the issue of maintenance; we cannot say that the trial court’s decision was unreasonable. The complaints of the Hoerners over the years, as depicted in the photographs taken shortly before Hurricane Katrina, primarily concerned the overgrowth of Ms. Title’s trees into the yard. However, as shown by the pictures taken after the storm, the trees themselves were blown over and into the brick wall, causing bricks to break off and damage the pool and other property of the Hoerners. It was not the overgrowth that did the damage.
We also agree that Ms. Title is entitled to the defense of force majeure. The winds of Hurricane Katrina caused trees to fall and damage property regardless of maintenance and/or location all over the Greater New Orleans area. Thus, we do not find that the trial court erred in applying that defense.[1]
Based on the foregoing, we affirm the judgment of the trial court in favor of the defendants and dismissing the petition.

AFFIRMED.

. Because the issue of subrogation was not an assignment of error raised by the Hoerners, we find that the issue is not before the court on appeal.