PER CURIAM.
We have for review the referee’s report recommending that the respondent, Richard Stuart Shankman, be found guilty of professional misconduct and suspended for a period of ninety days. Shankman seeks review of the referee’s recommendations as to both guilt and discipline, as well as an adverse evidentiary ruling. The Florida Bar cross-petitioned, seeking review of the referee’s recommendation that Shank-man be found not guilty of violating rule 4-8.4(c) of the Rules Regulating the Florida Bar, the finding of no aggravating factors, as well as the recommended discipline. We have jurisdiction. See art. V, § 15, Fla. Const.
BACKGROUND
The Florida Bar filed a four-count complaint against Shankman on June 11, 2008, alleging violations of a number of the Rules Regulating the Florida Bar with respect to his representation of a seventeen-year-old female client. Follow *169 ing appointment of a referee and holding a final hearing, the referee submitted a report recommending Shankman be found guilty of violating the following rules: under Count I, rule 4-1.5(a) (an attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee); under Count II, rules 4-1.1 (a lawyer shall provide competent representation to a client) and 4-1.4(b) (a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); and under Count III, rules 4-1.7(b) (conflict of interest) and 4-8.4(d) (conduct prejudicial to the administration of justice). With respect to Count IV, however, the referee recommends finding Shankman not guilty of violating rule 4-8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation). The referee also recommends that Shankman be suspended for ninety days, ordered to attend the Florida Bar’s Ethics School, and that costs be awarded to the Bar.
Shankman petitioned for review, challenging the referee’s recommendations of guilt with respect to Counts I, II, and III, the recommended sanction of a ninety-day suspension, and the referee’s ruling in which he took judicial notice of a federal district court order and report and recommendation underlying that order, issued by the United States District Court, Middle District of Florida, Tampa Division, Case No. 8:02-CV-2323-T-17EAJ. The case, brought by Shankman in a petition for quantum meruit, involved the client with whom Shankman’s conduct gave rise to these proceedings.[1] The Bar cross-petitioned, challenging the referee’s recommendation of not guilty as to Count IV, the finding of no aggravating factors, and the recommended discipline. In an order dated March 9, 2010, the Court suspended Shankman for a period of six months, effective thirty days from the date of the order. The opinion of the Court now follows.
ANALYSIS
1. Judicial Notice
Shankman challenges the referee’s ruling taking judicial notice of the federal district court judge’s order and the magistrate’s report and recommendation in Shankman’s civil action against the client, seeking quantum meruit relief.
Shankman argues that the referee misapplied section 90.202(2), Florida Statutes (2009).[2] In addition, Shankman contends that the facts in those documents tainted the instant proceedings and compromised the referee’s impartiality.
We reject Shankman’s claim. Bar disciplinary proceedings are not civil or criminal in nature, but quasi-judicial; therefore, the rules of evidence are not binding upon the referee. Fla. Bar. v. Tobkin, 944 So.2d 219, 224 (Fla.2006). “[T]his Court has reviewed referees’ ac *170 tions regarding the admissibility of evidence in discipline cases using an abuse of discretion standard.” Fla. Bar v. Rotstein, 835 So.2d 241, 244 (Fla.2002). The case law unequivocally supports the referee’s taking judicial notice of the federal report and recommendation and order in this bar disciplinary case. See, e.g., Fla. Bar v. Head, 27 So.3d 1 (Fla.2010); Tobkin, 944 So.2d at 224; Fla. Bar v. Vining, 707 So.2d 670, 672 (Fla.1998); Fla. Bar v. Calvo, 630 So.2d 548, 549-50 (Fla.1993); Fla. Bar v. Rood, 620 So.2d 1252, 1255 (Fla.1993). Thus, the referee could properly consider the federal district court’s order and magistrate’s report, and, although not done here, the referee could have relied “upon them as support for the disciplinary findings of fact.” Head, 27 So.3d at 8.
2. Recommendations of Guilt
In reviewing a referee’s findings of fact and recommendations concerning guilt, the Court’s standard of review is well-established: “This Court has repeatedly stated that with regard to facts, this Court’s review is limited, and if a referee’s findings of fact are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee.” Fla. Bar v. D’Ambrosio, 25 So.3d 1209, 1215 (Fla.2009).
Count I
Under Count I, the Bar alleged Shankman sought an excessive fee, in violation of rule 4-1.5(a). In July 2002, a seventeen-year-old woman (the client) hired Shankman to represent her in a civil matter. The year before, during spring break in Daytona Beach, Florida, the client had participated in a “wet t-shirt contest.” Unbeknownst to the client, the contest had been videotaped. When the videotape was broadcast on cable television, the client contacted the law firm Shankman, Tancredo & Co. L.C. regarding potential claims arising out of the videotaping and distribution of the videotape.
At that time, Shankman had been practicing law for less than three years and had no experience litigating in federal court. Shankman associated with Trenam Kemker, a Tampa law firm with trial and federal court experience. The client entered into a contingency fee agreement with Shankman and the Trenam Kemker firm, providing that the attorneys would receive 40 percent of her gross recovery. Under this agreement, Shankman was to receive 9.6 percent of the gross recovery. Because Shankman was dissatisfied with Trenam Kemker’s advice to settle the case, Shankman convinced the client to fire the firm.
Thereafter, Shankman advised the client to hire a second law firm, Gary, Williams, Parenti, Finney, Lewis, Watson & Speran-do, P.L. She entered into a contingency fee agreement with the firm and Shankman, which provided for a 45 percent contingency fee to the attorneys. Under this agreement, Shankman’s share of the fees increased to approximately 11.25 percent of the client’s gross recovery. After the Gary law firm attorneys arranged a settlement conference with one defendant, Shankman convinced the client to fire the Gary law firm.
The client then signed a contingency fee agreement with Shankman’s newly formed law firm, Litigation Concepts, L.C. Shank-man advised the client to hire a third law firm, Arthur Tifford, P.A. She signed a fee agreement addendum, providing for a 45 percent contingency fee to be split equally between the Tifford firm and Litigation Concepts. Thus, under this agreement, Shankman’s fee share again increased. For a third time, Shankman convinced the *171 client to fire the associated law firm. Following the hiring and firing of a fourth and fifth law firm, the client fired Shankman and retained new counsel.
Based upon these findings of fact, the referee recommends finding Shankman guilty of violating rule 4-1.5(a), which provides that “[a]n attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost.” Under rule 4-1.5(a)(1),
[a] fee or cost is clearly excessive when:
(1) after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee or the cost exceeds a reasonable fee or cost for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the attorney....
Accordingly, a lawyer may properly charge his or her client for the time that reasonably should be devoted to accomplish a particular task. Fla. Bar v. Richardson, 574 So.2d 60, 63 (Fla.1990). Moreover, rule 4-1.5(b) identifies numerous factors that can be considered in determining what constitutes a reasonable fee, including the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skills requisite to perform the legal services properly.
In recommending that Shankman be found guilty of violating rule 4-1.5(a), the referee relied upon two facts — i.e., that the percentage of Shankman’s fee increased with each subsequent hiring of a new law firm and that Shankman sought 45 percent of the client’s recovery in his action for quantum meruit in federal court. While the record supports these findings of fact, they are an insufficient basis upon which to conclude that Shankman’s fee was excessive. Moreover, the Bar did not present expert testimony to establish that Shankman’s fee was unreasonable. Therefore, we disapprove of this portion of the referee’s report. Cf. Fla. Bar v. Hollander, 607 So.2d 412, 414-15 (Fla.1992) (termination-of-services clause and withdrawal clause of contingency fee agreement violated rule 4-1.5(a) because “[b]oth clauses provided that [the client] promptly pay for all services, fees, charges, and expenses incurred through the date of either the termination or withdrawal, ... provided that Hollander’s law firm was entitled to a fee equal to the percentage amount stipulated in the contingency fee agreement until [the client], Hollander’s firm, and any new counsel worked out a mutually agreeable fee agreement, [and] allowed Hollander to collect twice for the same work, and thus, the agreement had the effect of intimidating a client from exercising the right to terminate representation”).
Count II
Count II of the Bar’s complaint alleged that Shankman failed both to provide competent representation to the client in violation of rule 4-1.1 and to fully explain certain matters reasonably necessary for the client to make informed decisions concerning the representation in violation of rule 4-1.4(b).
Shankman had been licensed to practice law for less than three years and had no federal court experience when he undertook the client’s representation. Initially, he recognized that he was not competent to handle the case alone and acted in accordance with rule 4-1.1. Under the rule, a newly admitted lawyer or one without the requisite knowledge and skill in a particular area may provide competent representation “through the association of a lawyer of established competence in the field in question.” In associating with the Trenam Kemker firm, the first firm Shankman recommended to the client, it appeared that *172 Shankman was taking the proper steps to comply with rule 4-1.1.
However, as found by the referee, Shankman’s problems began when he hired competent, more experienced law firms to help him and then decided not to take the advice of those firms. Testimony supports the finding that the Trenam firm was competent to bring the case to conclusion according to the client’s wishes and in her best legal interests. On the advice of Shankman, however, the client fired that firm and entered into cycles of hiring and firing other associated law firms. Although there was a real possibility of obtaining a settlement, as testified to at the final hearing, Shankman continued to persuade his client to fire experienced co-counsel who had advised settlement of the case. Thus, the referee found that Shank-man’s motivation underlying his complete disregard of the advice of competent counsel was a desire to take the case to trial.
Shankman challenges the referee’s findings and recommendation that he violated rule 4-1.1 on the basis that he was always working toward the client’s primary goal of enjoining the production and distribution of the videotapes at issue. However, Shankman presented no evidence that settling the case and otherwise protecting the client’s legal interests were mutually exclusive. Moreover, the referee found that the client wanted the case to be resolved as quickly as possible. Accordingly, we approve this portion of the referee’s report pertaining to Shankman’s violation of rule 4-1.1 as based on competent, substantial evidence in the record.
Shankman’s incompetent representation of his client — by ignoring the advice of experienced counsel — is exacerbated by his failure to provide his client with sufficient information concerning the case in order for her to make informed decisions. Specifically, the referee found that Shank-man did not discuss with the client the value of her case and the potential risks in hiring multiple law firms and failed to provide her weekly updates as she had requested. The lack of communication resulted in protracted litigation over attorney fees and delayed resolution of the case. The fact that Shankman told the client’s stepfather about quantum meruit did not relieve him of the duty owed the client. The Court, therefore, approves the referee’s findings of fact and recommendation as to guilt that Shankman violated rule 4-1.4(b) as supported by competent, substantial evidence in the record.
Count III
Under Count III, the Bar alleged that Shankman violated rules 4-1.7(b) (conflict of interest) and 4-8.4(d) (conduct prejudicial to the administration of justice). The referee found that Shankman’s conduct in initiating the hiring and firing of a number of law firms, with the incremental increase in his percentage of the recovery ■with each new hiring, and the resultant delay contrary to the client’s goal of resolving the case constituted engaging in a conflict of interest under rule 4-1.7(b). The referee further found that the delay occasioned by Shankman’s inability to work with the other attorneys delayed the administration of justice and increased the cost to his client in violation of rule 4-8.4(d). The referee, therefore, recommends Shankman be found guilty of violating the two rules. We approve this portion of the referee’s report as supported by competent, substantial evidence in the record.
Count IV
The Bar alleged that Shankman violated rule 4-8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation) in Count IV. The referee made the following findings: Each time Shankman *173 persuaded the client to fire co-counsel, he instructed her not to speak with the discharged attorneys or she would owe them legal fees. Shankman provided that same instruction to the client after advising her that the attorney with the third law firm had resigned from her case. Shankman further promised the client that she would not owe former counsel any fees.
The referee recommends Shankman be found not guilty of violating rule 4-8.4(c). In effect, the referee found that the Bar failed to present clear and convincing evidence establishing intent, a necessary element of the rule violation alleged — that the lawyer was dishonest or engaged in misrepresentation, deceit, or fraud.
“A referee’s finding with regard to intent is a factual finding which must be upheld if there is competent, substantial evidence in the record to support it.” Fla. Bar v. Nicnick, 968 So.2d 219, 224 (Fla. 2007). A referee’s legal conclusions, on the other hand, are subject to broader review by the Court. Fla. Bar v. Beach, 675 So.2d 106, 108 (Fla.1996). In Florida Bar v. Fredericks, 781 So.2d 1249 (Fla. 1999), the Court specifically stated that “in order to satisfy the element of intent it must only be shown that the conduct was deliberate or knowing.” Id. at 1252. Thus, the issue is whether Shankman “deliberately or knowingly engaged in the activity in question.” Fla. Bar v. Head, 27 So.3d at 9. Consequently, the referee erred as a matter of law when he required the Bar to establish dishonesty, misrepresentation, fraud, or deceit in order to prove intent. We conclude that the Bar established the element of intent by clear and convincing evidence in the record, based upon Shankman’s deliberate conduct in telling his client not to speak to the fired attorneys or she would owe them fees and that she would not have to pay the other lawyers. Therefore, we disapprove the portion of the referee’s report finding that the Bar failed to establish intent and the recommendation that Shankman be found not guilty of violating rule 4-8.4(c).
3. Discipline
The referee recommends Shank-man receive a ninety-day suspension and be ordered to attend the Florida Bar’s Ethics School. Generally, the Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. Fla. Bar v. De La Torre, 994 So.2d 1032 (Fla.2008). Nonetheless, in reviewing a referee’s recommended discipline, the Court’s scope of review is broader than that afforded to the referee’s findings of fact because ultimately it is our responsibility to order the appropriate sanction. See Fla. Bar v. Ticktin, 14 So.3d 928, 939 (Fla.2009); Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. With respect to a referee’s findings of aggravation and mitigation, however, as is the case with other factual findings, they carry a presumption of correctness and should be upheld unless clearly erroneous or without support in the record. Fla. Bar v. Herman, 8 So.3d 1100, 1106 (Fla. 2009).
We turn first to the aggravating factors under the Florida Standards for Imposing Lawyer Sanctions. The referee’s application of standard 9.22 was clearly erroneous. In his report, the referee explains that his consideration of aggravation was limited to only matters unrelated to the evidence underlying the recommendations of rule violations. Pursuant to standard 9.21, however, aggravating factors “are any considerations or factors that may justify an increase in the degree of discipline to be imposed.” Accordingly, *174 aggravating factors may well be based upon the circumstances of the rule violations at issue, as well as taking into consideration the existence of a prior disciplinary history and whether there exists a pattern of similar misconduct.
Here, the referee’s own findings of fact support the application of the following aggravating factors under standard 9.22: dishonest or selfish motive, a pattern of misconduct, refusal to acknowledge the wrongful nature of the conduct, and the vulnerability of the victim. As the referee found in his report, Shankman put his own interests before his client’s. Shankman’s goal with respect to representation of the client was to take the case to trial, notwithstanding the advice of experienced attorneys, each of whom recommended that the case be settled. In addition, Shankman engaged in a pattern of misconduct in repeatedly advising the client, over a period of years, not to speak with prior counsel following the firing of each firm, or she would have to pay their legal fees. Shankman not only insists that he did nothing wrong, but blames any harm caused on the conduct of others and the client herself. Further, the client was a teenager at the time of the representation, unfamiliar with the legal system. Also, under standard 12.1b, Shankman’s misconduct resulted in actual harm to the client and others. His unrelenting opposition to even considering the possibility of settling the case unnecessarily consumed the time and resources of numerous law firms, delayed resolution of the client’s case, and increased the cost of litigation for the client. Shankman’s protracted fee litigation also constituted an unnecessary burden upon the federal district court.
The referee found the following mitigating factors under standard 9.32: absence of a prior disciplinary record, inexperience in the practice of law, and remorse. In addition, as a mitigating factor, the referee was of the opinion that Shankman was genuine in trying to get some type of resolution for his client that he thought was the best, but that he was misguided and caused delay in the administration of justice.
“The fact that there is some evidence in the record to support a finding that a mitigating factor might apply does not mean that the referee should have necessarily found it applicable.” Herman, 8 So.3d at 1106. With respect to the mitigating factors that Shankman was inexperienced in the practice of law at the time and remorseful, the record evidence clearly contradicts the referee’s conclusion. Significantly, Shankman recognized his lack of experience in federal practice, but repeatedly ignored the advice of the practitioners he had engaged because of their greater legal experiences. In addition, the evidence demonstrates that Shankman has maintained throughout these proceedings that he was acting as an advocate for his client’s ultimate wishes and disputes that he acted unethically at all. Accordingly, we disapprove of the referee’s report pertaining to the mitigating factors as clearly erroneous, except for the lack of prior disciplinary history as mitigation.
With regard to the Florida Standards for Imposing Lawyer Sanctions, the referee only considered standard 9.0, pertaining to aggravating and mitigating factors, in making his recommendation. Based upon the facts found by the referee and supported by the record, standards 4.32, 4.42a, 4.52, 4.62, and 7.2 also apply to the Court’s consideration of the appropriate discipline in light of the rule violations.[3] *175 Under the applicable standards, suspension is the presumptive discipline in this case. However, because the standards do not address the appropriate length of a suspension, the Court examines caselaw to determine whether the referee’s recommendation of a ninety-day suspension has a reasonable basis.
The sole case relied upon by the referee, Florida Bar v. Maurice, 955 So.2d 535 (Fla.2007), does not apply to the circumstances found in this case. In Maurice, the evidence supported the recommendation that the respondent had violated rules 4-1.1 and 4-1.7(b). 955 So.2d at 540. Those two rule violations, in conjunction with two aggravating factors — vulnerability of the victim and substantial experience in the practice of law — and one mitigating factor — absence of a prior disciplinary record — warranted a ninety — day suspension. Id. at 542. Significantly, in Maurice, unlike the facts in this case, there was no violation of rules 4 — 8.4(c) and 4-8.4(d). Id. at 537-38.
Moreover, existing case law supports a sanction greater than a ninety-day suspension in this case. See Fla. Bar v. Fredericks, 731 So.2d 1249, 1254 (Fla.1999) (six-month suspension warranted upon attorney’s misrepresentations regarding status of a nonexistent lawsuit in violation of rules 4-1.3 (diligence), 4-1.4 (informing client of status of representation), and 4-8.4(c) (misconduct involving dishonesty, fraud, deceit, or misrepresentation)); Fla. Bar v. Vining, 721 So.2d 1164, 1169 (Fla. 1998) (in light of extensive aggravating factors and minimal mitigation, six-month suspension imposed upon violations of rule 4-1.2(a) (a lawyer shall abide by a client’s decisions concerning the objective of representation and shall consult with the client as to the means by which they are to be pursued); rule 4-1.7(b) (a lawyer shall not represent a client if the lawyer’s exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer’s responsibilities to another client or to a third person or by the lawyer’s own interest); and rule 4-1.16 (a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if the lawyer is discharged)).
Accordingly, having failed to engage in a considered review of the appropriate sanction under existing case law and the standards, we reject that portion of the referee’s recommendation on discipline with respect to the length of Shankman’s suspension. Instead, we conclude that a six-month suspension is the appropriate sanction. All other conditions of discipline recommended by the referee are approved.
CONCLUSION
Accordingly, we approve the referee’s findings of fact and recommendation of guilt as to violations of rules 4-1.1, 4-1.4(b), 4.1.7(b), and 4-8.4(d). However, we disapprove the referee’s recommendation of guilt as to a violation of rule 4-1.5(a), *176 recommendation of not guilty as to a violation of rule 4 — 8.4(c), and finding of no aggravating factors. We also disapprove the referee’s recommended discipline of ninety days. Respondent Shankman is hereby suspended from the practice of law for a period of six months, effective, nunc pro tunc, April 8, 2010, the effective date of the discipline imposed by this Court on March 9, 2010. Fla. Bar v. Shankman, No. SC08-1107, 32 So.3d 60, 2010 WL 834378 (Fla. Mar. 9, 2010) (unpublished order). As Shankman is currently suspended, it is not necessary to provide him with thirty days to close out his practice to protect the interests of existing clients.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Richard Stuart Shankman in the amount of $11,496.45, for which sum let execution issue.[4]
It is so ordered.
PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
CANADY, C.J., concurs in result.

. On October 30, 2008, Shankman filed a Petition for Review of Non-Final Order in this Court, seeking review of the referee's order granting judicial notice of the Report and Recommendation of U.S. Magistrate Judge Elizabeth A. Jenkins, dated January 27, 2006, and the Order of U.S. District Judge Elizabeth Kovachevich, dated March 31, 2006, approving the Report and Recommendation. The Florida Bar filed a motion to dismiss Shankman’s petition. On January 22, 2009, the Court granted the Bar's motion and dismissed the petition without prejudice.

. Section 90.202 provides in pertinent part that "[a] court may take judicial notice of the following matters, to the extent that they are not embraced within s. 90.201: ... (2) Deci-sional, constitutional, and public statutory law of every other state, territory, and jurisdiction of the United States.”

. The relevant, standards provide as follows: 4.32 Suspension is appropriate when a *175 lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.
4.42a Suspension is appropriate when: a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client.
4.52 Suspension is appropriate when a lawyer engages in an area of practice in which the lawyer knowingly lacks competence, and causes injury or potential injury to the a client.
4.62 Suspension is appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.
7.2 Suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

. The Bar’s affidavit of costs incorrectly calculated the total amount as $12,746.45.