PER CURIAM.
We have for review a referee’s report recommending that Miroslaw Thomas Lo-basz be found in indirect contempt and suspended from the practice of law for three years effective, nunc pro tunc, April 10, 2008. We have jurisdiction. See art. V, § 15, Fla. Const. We approve the referee’s findings of fact and recommendation of guilt, but disapprove the recommended sanction. We hereby disbar Miroslaw Thomas Lobasz from the practice of law in Florida.
BACKGROUND
On March 7, 2008, the Court entered an order suspending Lobasz for three years. Fla. Bar v. Lobasz, 979 So.2d 220 (Fla.2008) (table). Subsequently, in June 2008, pursuant to Rule Regulating the Florida Bar 3 — 7.11(f) (Contempt), The Florida Bar filed a petition for contempt alleging that Lobasz practiced law after his suspension took effect by appearing at an immigration hearing on behalf of a former client. The Court issued an order directing Lobasz to show cause why he should not be held in contempt and disbarred. After responses were filed, the case was referred to a referee. Thereafter, the referee submitted a report to the Court, in which he makes findings of fact and recommendations, which are discussed below.
The Bar’s petition alleged that Lobasz, while suspended, appeared at an immigration hearing on behalf of a former client along with the client’s new counsel, made legal arguments at the immigration hearing, and questioned his former client at the hearing. Before the referee, the Bar moved for summary judgment regarding the facts of Lobasz’s conduct at the immigration hearing and on the conclusion of law that his actions constituted the practice of law. The referee entered an order, with the agreement of Lobasz, granting partial summary judgment and finding that Lobasz actively participated in a hearing before the Honorable Denise A. Marks Lane, a United States Immigration Judge, on April 10, 2008, in Removal Proceedings of Alberto Gaspar-Martinez, Case No. A028957234. The referee further found that Lobasz, at the immigration hearing, addressed and responded to the court and conducted a direct examination of Gaspar-Martinez, his former client, which constituted the practice of law.
After holding a hearing, the referee found that Lobasz’s three-year suspension (Fla. Bar v. Lobasz, 979 So.2d 220 (Fla.2008)) took effect on April 7, 2008. Pursuant to the Court’s order of suspension, Lobasz was directed to close his law practice during the thirty-day period before the suspension became effective. In the course of that “close out” period, Lobasz transferred most of his open cases to Linda Amy Ann Cahill, a member of The Florida Bar with whom he shared office space. Gaspar-Martinez was one of Lo- *1170 basz’s former clients, whose case had been transferred to Cahill. Cahill had filed the appropriate administrative form to appear as counsel for Gaspar-Martinez.
Three days after his suspension became effective, Lobasz accompanied Cahill, at her request, to the April 10, 2008, immigration hearing in Removal Proceedings of Alberto Gaspar-Martinez, Case No. A028957234. This was a deportation hearing. Lobasz intended to assist Cahill as needed, to “make sure that everything was done right,” and “to whisper in her ear when [he] thought something had to be done.”
At the hearing, Cahill informed Judge Lane that she was representing Gaspar-Martinez. Neither Lobasz nor Cahill informed the court or opposing counsel that Lobasz was suspended from the practice of law. Lobasz sat at counsel table with Cahill. He responded to questions posed by Judge Lane regarding the procedural history of the case. Further, Lobasz conducted a direct examination of Gaspar-Martinez because Cahill did not understand the foundation needed to qualify Gaspar-Martinez for voluntary departure.
Before the referee, Lobasz testified that at the time of the immigration hearing, he was suffering from post-traumatic stress syndrome, anxiety, and depression. In addition, his father was hospitalized and dying. Lobasz stated that his actions at the immigration hearing were motivated by his emotional state and desire to help a former client.
The referee recommended that Lobasz be found in indirect contempt of the Court for his “technical violation” of the Court’s March 7, 2008, order of suspension. As a sanction for the contempt, the referee recommended that Lobasz be suspended for a period of three years effective, nunc pro tunc, April 10, 2008 (the date of Lobasz’s appearance at the immigration hearing), to run concurrently with the three-year suspension already imposed in Case No. SC06-2500. The referee further recommended that Lobasz pay the Bar’s costs in the amount of $3,259.80.
In recommending this sanction, the referee found two aggravating and five mitigating factors. The aggravating factors are: (1) prior disciplinary offense (the case in which Lobasz was suspended for three years for his trust-accounting violations, Florida Bar v. Lobasz, 979 So.2d 220 (Fla.2008) (Case No. SC06-2500)); and (2) injury to the legal system due to Lobasz’s failure to inform the immigration judge of his suspension, which disrupted a legal proceeding to the extent that it required the immigration judge to reschedule a hearing that was set for the following week. The mitigating factors found by the referee are: (1) absence of a conscious intent to violate the Court’s disciplinary order; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) remorse; and (5) the absence of any injury to the client.
The Florida Bar petitions the Court for review, arguing that (1) the referee abused his discretion in allowing Lobasz to testify in mitigation concerning medical conditions that he failed to disclose during discovery; (2) the referee’s finding that Lobasz lacked a conscious intent to violate the Court’s order is not supported by competent, substantial evidence; and (3) the referee’s recommended sanction is not supported.
ANALYSIS
First, The Florida Bar argues that the referee abused his discretion in allowing Lobasz to testify concerning his mental conditions. Lobasz failed to disclose his mental status as a mitigating factor in his answers to interrogatories.[1] The Bar *1171 claims that the referee allowed Lobasz to testify, overruling the Bar’s objection. A review of the transcript from the hearing before the referee, however, reveals that the Bar did not object when Lobasz testified that he suffered from post-traumatic stress disorder, anxiety, and depression. In fact, later in the hearing, when Lobasz testified further regarding his symptoms and treatment, the Bar again failed to object to his testimony. Thus, the Bar waived its objection to Lobasz’s testimony by failing to object when the testimony was first given.[2]
Even if the Bar had preserved its objection, “a referee has wide latitude to admit or exclude evidence and may consider any relevant evidence, including hearsay and the trial transcript or judgment in a civil proceeding.” Fla. Bar v. Tobkin, 944 So.2d 219, 224 (Fla.2006) (citations omitted). “A referee’s decisions about the admissibility of evidence will not be disturbed absent an abuse of discretion.” Id.; see also Fla. Bar v. Rotstein, 835 So.2d 241, 244 (Fla.2002). Based on the record, the referee did not abuse his discretion. The Rules of Civil Procedure apply in attorney disciplinary proceedings before a referee to the extent that they are not inconsistent with any provision of Rule Regulating the Florida Bar 3-7.6 (governing procedures for proceedings before a referee). See Fla. Bar v. Daniel, 626 So.2d 178 (Fla.1993); see also R. Regulating Fla. Bar 3 — 7.6(f)(1). “Discovery shall be available to the parties in accordance with the Florida Rules of Civil Procedure.” R. Regulating Fla. Bar 3-7.6(f)(2) (discovery in proceedings before the referee). In civil cases, like Bar disciplinary cases, a trial court’s decision to impose discovery sanctions is discretionary and is only reviewed for an abuse of discretion. See Vega v. CSCS Int’l, N.V., 795 So.2d 164, 167 (Fla. 3d DCA 2001). Further, the exclusion of a witness’s testimony as a discovery sanction is a drastic remedy that should be used only under the most compelling circumstances. Id.; see also Griefer v. DiPietro, 708 So.2d 666, 670 (Fla. 4th DCA 1998). Based on case law and the record, we conclude that the referee did not abuse his discretion in allowing Lobasz to testify concerning his mental status at the final hearing. Additionally, this evidence supports the referee’s finding that Lobasz suffered from post-traumatic stress disorder, anxiety, and depression.
Although a referee has wide latitude to admit evidence and may consider any relevant evidence, we must emphasize that “trial by ambush” tactics will not be condoned. Lobasz failed to update his responses to the Bar’s discovery requests. The Bar, in interrogatories propounded to Lobasz during the discovery phase, asked Lobasz to identify any mitigation that he would seek to advance at the final hearing. In response, Lobasz stated that any potential mitigation had not yet been determined. He did not amend or supplement this answer and, thus, never identified any mitigation evidence he planned to introduce at the hearing. While we conclude that the instant referee did not abuse his discretion in allowing the testimony, we feel compelled to reiterate that parties who evade their discovery responsibilities will *1172 not be permitted to benefit from such improper tactics.
Second, the Bar argues that there is not competent, substantial evidence to support the finding that Lobasz lacked a conscious intent to violate the Court’s suspension order. The Court’s review of a referee’s factual findings is limited, and if a referee’s finding of fact is supported by competent, substantial evidence in the record, the Court will not reweigh the evidence and substitute its judgment for that of the referee. Fla. Bar v. Frederick, 756 So.2d 79, 86 (Fla.2000); see also Fla. Bar v. Jordan, 705 So.2d 1387, 1890 (Fla.1998). To succeed in challenging a referee’s finding of fact, the party, in this case the Bar, must establish that there is a lack of evidence in the record to support the finding or that the record clearly contradicts the referee’s conclusion. Fla. Bar v. Committe, 916 So.2d 741, 746 (Fla.2005); Fla. Bar v. Karten, 829 So.2d 883, 888 (Fla.2002).
The referee found that Lobasz did not intentionally violate the Court’s order of suspension, due to Lobasz’s state of mind (the mitigating factors regarding Lobasz’s mental conditions). Even though the referee made these findings, he recommended that Lobasz be found in indirect contempt for violating the order of suspension. Our review of the record finds support for these mitigating factors, which in turn support the referee’s finding as to intent.
Third, the Bar asserts that the referee’s recommended sanction of a three-year suspension is not supported and argues that disbarment is the appropriate sanction. In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is our responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, 15, Fla. Const. However, generally speaking this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
In contempt cases, a respondent’s “[c]lear violation of any order or disciplinary status that denies an attorney the license to practice law generally is punishable by disbarment, absent strong extenuating factors.” Fla. Bar v. Brown, 635 So.2d 13, 13-14 (Fla.1994). Lobasz violated the Court’s order of suspension and, consequently, we -find him in contempt. Thus, the presumptively correct sanction in this case is disbarment unless there are strong extenuating factors. Brown; see also Fla. Bar v. Bitterman, 33 So.3d 686, 688 (Fla.2010) (holding suspended attorney in contempt for engaging in the practice of law and disbarred); Fla. Bar v. D’Ambrosio, 25 So.3d 1209, 1220 (Fla.2009) (same); Fla. Bar v. Heptner, 887 So.2d 1036, 1045 (Fla.2004) (same).
The referee found five mitigating factors: (1) absence of a conscious intent to violate the Court’s disciplinary order; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) remorse; and (5) the absence of any injury to the client. In determining whether these mitigating factors constitute strong extenuating circumstances, we reviewed the record. We find that the weight of the mitigating evidence is significantly diminished.
By his own admission, Lobasz continued to advise Cahill on the cases of his former clients and briefed her to prepare her for hearings. Lobasz testified: “As the hearing gets closer, I have to review the case with her, let her know *1173 exactly where the case stands and what’s going on with it.” His continuing role in the cases of his former clients cannot be attributed to the mitigating factors found by the referee. Plainly stated, a year after his suspension became effective, Lo-basz should not have been involved in these cases. Lobasz testified that he was not compensated by Cahill for his services. Nevertheless, even the voluntary services of a suspended lawyer can constitute the practice of law and violate an order of suspension. Rule Regulating the Florida Bar 3-6.1 provides guidance. Subdivision (a) only permits lawyers to employ suspended lawyers “to perform those services that may ethically be performed by non-lawyers.” The rule applies whether the suspended lawyer is “a salaried or hourly employee, volunteer worker, or an independent contractor providing services to the entity.” (Emphasis added.) Subdivision (e) of the rule requires notice to the Bar “[b]efore employment commences.” Thus, Lobasz was on notice that he should not advise Cahill regarding the cases of his former clients. See Fla. Bar v. Forrester, 916 So.2d 647, 653 (Fla.2005) (holding the respondent in a contempt case, as a lawyer, was on notice of the Court’s case law establishing the parameters for permissible activities for suspended attorneys who work as law clerks in a law office during a period of suspension). Further, Lobasz testified that he continued to go to his former law office almost daily, met with former clients one-on-one to collect fees he allegedly earned before the suspension was imposed, and prepared pleadings for Cahill, and that occasionally Cahill would call him into her office to ask him a question about a case with the client present. Even if Lobasz provides these services voluntarily, the rule required notice to the Bar before Lobasz began advising Cahill, as well as compliance with the rule (such as the quarterly reporting requirements stated in subdivision (e)). Thus, while Lo-basz asserts that he lacked a conscious intent to violate the Court’s order of suspension when he engaged in misconduct at the immigration hearing, the record demonstrates that his misconduct did not stop after the hearing. Long after the April 10, 2008, immigration hearing, Lobasz continued to engage in the practice of law by advising Cahill regarding cases that were allegedly transferred to her over a year before. These facts prevent the mitigating factors, which applied to his misconduct at the immigration hearing, from constituting extenuating circumstances. As Lobasz has failed to overcome the presumption of disbarment, we disapprove the referee’s recommended sanction of a three-year suspension and impose disbarment. See Brown; Bitterman; D’Ambrosio.
CONCLUSION
Accordingly, Miroslaw Thomas Lobasz is hereby disbarred from the practice of law in Florida, effective immediately. As Respondent is currently suspended, it is unnecessary to provide him with thirty days to close out his practice to protect the interests of existing clients. Miroslaw Thomas Lobasz shall fully comply with Rule Regulating the Florida Bar 3-5.1(g). Further, Respondent shall accept no new business until he is readmitted to the practice of law in Florida.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Miroslaw Thomas Lobasz in the amount of $3,259.80, for which sum let execution issue.
It is so ordered.
LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
*1174 PARIENTE, J., concurs in result with an opinion, in which CANADY, C.J., and POLSTON, J., concur.

. The Bar also asserts that the referee should not have permitted Lobasz to introduce a *1171 copy of his therapist’s report concerning Lo-basz’s mental condition because the report was not produced after the Bar served a request to produce. We find this argument to be without significance because Lobasz’s counsel withdrew his proffer of the report after Bar counsel objected to its admission. As the report was not admitted into evidence, the Court will not consider this argument further.

. The Bar did object later to the introduction of an e-mailed report from his therapist.