# Supreme Court of Florida

_____

No. SC16-1387
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**KELLEY ANDREA BOSECKER,**
Respondent.

September 27, 2018

PER CURIAM.

We have for review a referee's report recommending that Respondent, Kelley Andrea Bosecker, be found guilty of professional misconduct in violation of the Rules Regulating the Florida Bar (Bar Rules) and disbarred. We have jurisdiction. *See* art. V, § 15, Fla. Const. Bosecker has sought review of the referee's report. For the reasons that follow, we approve in part the referee's factual findings and recommendations as to guilt, and approve the recommended disciplinary sanction of disbarment.

## FACTS

Previously, in case number SC15-1592, Bosecker was the subject of a

Florida Bar (Bar) disciplinary proceeding in which the Court approved the uncontested report of the referee and found her guilty of violating Bar Rules 4-3.1 (Meritorious Claims and Contentions) and 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice), and imposed a forty-five day suspension. *Fla. Bar v. Bosecker*, No. SC15-1592, 2016 WL 2595926 (Fla. May 5, 2016).

Nearly three months later, on August 1, 2016, the Bar filed a "Petition for Contempt and Order to Show Cause" against Bosecker, alleging that she was in contempt of the suspension order in case number SC15-1592, effective May 27, 2016. Specifically, Bosecker failed to comply with Bar Rule 3-5.1(h), the notification requirement, and had also continued to engage in the practice of law during her suspension by having direct contact with her clients, engaging in discussions with opposing counsel, and contacting court personnel pertaining to the following cases in which she was counsel of record: *U.S. Bank, N.A. v. Rucker*, case number 2013-CA-002913, in the Fifth Judicial Circuit (Lake County, Florida); *Bank of New York Mellon v. Hodge*, case number 14-006510-CI, in the Sixth Judicial Circuit (Pinellas County, Florida); *JP Morgan Chase Bank, N.A. v. Investor Trustee Services, LLC*, case number 2013-CA-000689, in the Fifth Judicial Circuit (Lake County, Florida); *DeParedes v. Green Tree Servicing, LLC*, case number 5D15-3412, in the Fifth District Court of Appeal; and *Investor*

*Trustee Services, LLC v. PNC Bank N.A.*, case number 2D15-4549, in the Second

District Court of Appeal.

As a result of her alleged improper conduct, the Bar sought disbarment.

On August 3, 2016, the Court issued its order to show cause, directing

Bosecker to show cause why she should not be held in contempt or otherwise

disciplined. Bosecker filed her response on September 7, 2016, stating:

> [At] no time during the suspension period did she hold herself out to
> be an attorney, represent to anyone that she was an attorney, send any
> correspondence or email representing that she was an attorney; nor did
> Respondent take any action that violated the terms of her suspension
> from the Bar.

Based upon her responses to the Bar's allegations, the case was referred to a

referee.

Following a final hearing, the Report of Referee was filed with the Court on

May 25, 2017. The referee recommended that Bosecker be held in contempt of the

order in case number SC15-1592, and recommended that she had violated Bar

Rules 3-5.1(e) (Suspension), 3-5.1(h) (Notice to Clients), 3-6.1(c) (Notice of

Employment Required),[1] and 4-8.4(c) (a lawyer shall not engage in conduct

---

1. While the Report of Referee makes reference to Bar Rule 3-6.1(c) and to the fact that Bosecker was employed during her suspension without complying with the requirements of Bar Rule 3-6.1, the referee also concluded that Bosecker violated the rule "by having direct client contact while suspended." Accordingly, it appears that the referee also intended to reference Bar Rule 3-6.1(d)(1) (Prohibited Conduct; Direct Client Conduct).

involving dishonesty, fraud, deceit, or misrepresentation). The referee further recommended that Bosecker be disbarred. Bosecker filed her "Notice of Intent to Seek Review of Report of Referee," and briefs have been filed by the parties.

**The Referee's Findings of Fact and Recommendations as to Guilt.**

Based upon the testimony presented and the evidence admitted at the hearing, the referee made the following findings and recommendations of guilt.

First, the referee found that Bosecker violated Bar Rule 3-5.1(h), as follows.

> The Supreme Court of Florida issued an order dated May 5, 2016, in *The Florida Bar v. Kelley Andrea Bosecker*, Case No. SC15-1592, suspending Respondent from the practice of law for forty-five (45) days (the" [sic] Suspension Order'). The Suspension Order was to be effective thirty (30) days so that Respondent could protect the interests of her existing clients, unless she notified the court that the 30 days was not needed to protect her clients' interests. Respondent was ordered to accept no new business from the date of the Suspension Order until reinstated, and ordered to fully comply with Rule 3-5.1(h), Rules Regulating The Florida Bar. TFB Exh. 1.

> On June 1, 2016, Respondent filed an "Amended Notice by Respondent of Commencement of Suspension," indicating that she ceased practicing law as of midnight on May 26, 2016, and elected to commence her suspension on May 27, 2016. TFB Exh. 3. On June 1, 2016, the Court entered an order making Respondent's suspension effective May 27, 2016, as requested in Respondent's notice. TFB Exh. 4. Thus, Respondent was suspended from May 27, 2016, to July 11, 2016.

> From June 3, 2016, through June 13, 2016, Respondent requested extensions of time to submit her required sworn affidavit pursuant to Rule 3-5.1(h) to the Bar. The Bar granted Respondent's first request for an extension, allowing her to submit the affidavit by June 13, 2016. TFB Exh. 5. On the day the affidavit was due, Respondent again asked for additional time from the Bar, which was

denied. She then filed a "Motion for Extension of Time to File Affidavit of Providing Suspension Notice" with the Court seeking an extension solely for her affidavit by June 17, 2016. TFB Exh. 6. In her motion, Respondent stated she "has sent out the required suspension notices but needs additional time to finish the list of names and addresses required to be attached to the Affidavit before the Affidavit is submitted to the Bar." The Court entered an order on June 17, 2016, allowing Respondent until June 17, 2016, to provide the affidavit to the Bar. TFB Exh. 9. Respondent submitted her Rule 3-5.1 affidavit to the Bar on June 16, 2016. TFB Exh. 8. Respondent neither requested nor was given an extension to submit the Suspension Order to the necessary persons or entities. TFB Exhs. 5, 6, 9.

The evidence showed, and Respondent admitted, that she was still furnishing a copy of her Suspension Order to clients, opposing counsel, and courts in mid-June 2016, and as late as June 16, 2016. TFB Exhs. 7, 12d, 13f, 16d, 20e. Additionally, Respondent failed to provide a copy of the Suspension Order to at least one client, Daniel and Jill Baez. TFB Exhs. 8, 19 a-b. The Court heard from the following witnesses who each testified about Respondent's violation of Rule 3-5.1(h): Melissa Mara; Respondent; Alicia Raina Whiting-Bozich, Esq.; Julie Anthousis, Esq.; Chanelle L. Gardner; Judge Thomas H. Minkoff; Linda Holm; Joanne P. Simmons; Judge Vincent G. Torpy, Jr.; and, Kimberly Nolen Hopkins, Esq.

. . . .

The Bar's petition, and the evidence presented at the final hearing, gave examples of Respondent's cases in which Respondent did not provide her clients with notice of her suspension until her suspension had already begun. Respondent did not give those clients an opportunity to take action to protect their interests. Additionally, opposing counsels, Ms. Whiting-Bozich, Ms. Anthousis, and Ms. Hopkins, testified that as of the dates Respondent contacted them regarding her clients' cases, the attorneys had neither received notice from Respondent that she was suspended nor provided a copy of the Suspension Order. The purpose of Rule 3-5.1(h) was entirely thwarted in this case, as Respondent was still furnishing a copy of her Suspension Order to clients, opposing counsel, and courts several weeks after she elected to start her suspension on May 27, 2016.

- 5 -

The referee next found facts pertaining to her recommendations that Bosecker was guilty of violating Bar Rules 3-5.1(e) and 3-6.1[2]:

> The evidence presented at the hearing established clearly and convincingly that Respondent violated Rule 3-5.1(e) by continuing to practice law while suspended, and Rule 3-6.1(c) [sic] by having direct client contact while suspended. Respondent improperly engaged in direct contact with her clients during her period of suspension, and improperly continued to assist her clients during her suspension. Respondent engaged in improper and prohibited discussions with opposing counsel during her suspension. Respondent engaged in improper discussions with court personnel during her suspension. Respondent held herself out to the courts and opposing counsel as an attorney eligible to practice law. Respondent was also allegedly employed during the period of suspension without complying with the requirements of Rule 3-6.1.
>
> The Referee heard from the following witnesses who testified about Respondent continuing to practice law while suspended, and her direct client contact while suspended: Respondent; Alicia Raina Whiting-Bozich, Esq.; Julie Anthousis, Esq.; Chanelle L. Gardner; Judge Thomas H. Minkoff; Linda Holm; Grace Ann Fagan, Esq.; Kimberly Nolen Hopkins, Esq.; and, Erica DeParedes.
>
> At the final hearing, evidence was presented to support this Rule violation. Respondent stated in the May 27, 2016, letter that she sent to her clients, opposing counsel, and the courts that she would monitor the clients' cases during the suspension period and that the clients should as well. TFB Exh. 2. Respondent's letter advised the clients that if they needed legal assistance during the suspension period, she would be happy to refer them to an appropriate attorney, and to feel free to contact her if they had any questions or needed additional information. Respondent also sent a letter dated June 1, 2016, on her "attorney at law" letterhead addressed to the District

---

2. As observed previously, the referee's findings of guilt as to Bar Rule 3-6.1 appear to pertain to both subdivisions (c) and (d)(1).

Court of Appeal Clerks in appellate cases she had asking that the District Court of Appeal Clerks provide a copy of her May 27, 2016, letter to the Judges assigned to her cases. TFB Exh. 16b.

Respondent's letters are concerning and speak volumes regarding her intent to violate the Rules. Respondent should not have been monitoring her clients' cases during her suspension period. Respondent received copies of pleadings and orders filed in her clients' cases throughout her suspension because she was still attorney of record in the cases, and did not promptly notify the courts or opposing counsel of her suspension. TFB Exhs. 14c, 16c. Additionally, Respondent's letter dated May 27, 2016, was not provided to her clients until mid-June. To give her clients an opportunity to protect their interests, Respondent should have notified them of her suspension and provided them with an attorney referral prior to the effective date of suspension. Respondent should not have welcomed her clients to contact her during her suspension, as she was prohibited from having direct contact with them. Each of these actions violates the Rules and supports a finding of contempt.

The Bar then presented several cases in which Respondent's participation violated the Suspension Order. In each case, the evidence and testimony demonstrated misconduct in the form of prohibited client contact, lack of employer supervision, and practicing law during the suspension period. A running theme in all of these cases was Respondent's assertion and testimony that other attorneys supervised her, namely Ann Pellegrino and Andrea Roebuck. However, prior to and during Respondent's suspension, the Bar did not receive any notice from Ms. Pellegrino or Ms. Roebuck pursuant to Rule 3-6.1(c) indicating that Respondent was employed by either of them during the period of her suspension. TFB Exhs. 10, 11. In fact, no such notice was received until after the Bar filed its Petition for Contempt and Order to Show Cause in this case. Respondent, Ms. Pellegrino, and Ms. Roebuck each testified that none of them had read Rule 3-6.1 regarding employment of suspended lawyers until about September of 2016, although the Bar sent Respondent a letter dated May 9, 2016, advising her to review Rule 3-6.1 if she intended to be employed while suspended. Respondent testified that she received the Bar's May 9, 2016, letter.

. . . .

In each of these cases, Respondent's suspension prohibited her from providing legal services and legal advice. . . . The evidence and testimony presented clearly and convincingly shows that Respondent counselled and assisted her clients throughout her suspension, which is the unauthorized practice of law in violation of her suspension order.[3]

---

3. The cases discussed by the referee include the following misconduct (record citations omitted):

[1] In *U.S. Bank v. Rucker*, where Respondent represented Emanuel Rucker. Respondent admitted that on June 30, 2016, she sent an email to opposing counsel, Ms. Whiting-Bozich and Mr. Flicker, stating that Respondent had been in contact with Mr. Rucker and that they were compiling information in the case. In the same email, Respondent asked if opposing counsel would be agreeable to extending a discovery deadline and in granting an extension for filing a counterclaim. Respondent copied her client, Mr. Rucker, on the email. The testimony and evidence showed that Respondent was not supervised by an attorney on this case and another attorney did not direct her to email opposing counsel. . . .

[2] In *Bank of New York Mellon v. Hodge*, Respondent represented Lloyd and Karin Hodge. Respondent testified that she may have drafted and provided the Emergency Motion to Stay Application for Writ of Possession in the client's Second District Court of Appeal case to her clients prior to her suspension. The clients filed the motion *pro se* on June 1, 2016. By order dated June 2, 2016, the Second D.C.A. denied the motion. The order stated that, "[t]he appellants should be aware…that any future pro se filings in this court will be subject to being stricken without further notice to the extent that the appellants remained represented by counsel." Respondent was served with the court's June 2, 2016, order as she was still counsel of record, and she failed to timely notify the court of her suspension. . . .

Respondent admitted that on June 7, 2016, she sent an email to Chanelle L. Gardner, Judicial Assistant to the Honorable Thomas H.

Minkoff, stating that Mr. and Mrs. Hodge were requesting that the judge consider the motion for stay of the writ entered by the judge on June 1, 2016, and requesting information regarding what the clients needed to do to get the judge to make a determination on the motion the clients filed *pro se*. Respondent copied her clients and opposing counsel on the email. Respondent did not indicate in the email that she was suspended from the practice of law, or that she was not emailing the court as an attorney. By sending an email to the judicial assistant requesting information in the client's case, Respondent provided a service to her client during her suspension. By copying her clients on the email, Respondent had prohibited contact with her clients during her suspension.

. . . Furthermore, and glaringly significant, Respondent's email failed to indicate she was contacting the court on behalf of another attorney. . . .

[3] In *JP Morgan Chase Bank v. Investor Trustee Services*, Respondent represented Investor Trustee Services. Respondent admitted that on or about the morning of June 14, 2016, Respondent left a voicemail message and sent an email to Linda Holm, Judicial Assistant to the Honorable Sandra Champ, indicating that the defendant would be filing a motion to cancel a foreclosure sale set for June 22, 2016, based on a pending motion for rehearing, and also requesting information and hearing times in the matter. . . .

. . . .

[4] In *DeParedes v. Green Tree Servicing*, Respondent represented Erika and Eduardo DeParedes. Respondent admitted that she engaged in two instances of direct contact with her client, Erica DeParedes, during the suspension period. On or about June 9, 2016, Respondent was served with the Appellee's Answer Brief as Respondent was counsel of record in the case, and failed to timely inform opposing counsel, Kimberly Hopkins, or the court of Respondent's suspension. Respondent admitted that she contacted Ms. DeParedes on or about June 9, 2016, to advise that she had received service of the Appellee's Answer Brief, that a Reply Brief needed to be filed, and was due in 20 days. . . .

On June 16, 2016, Respondent emailed opposing counsel, Ms. Hopkins, and asked if she would consent to an extension until July 28 for the filing of a reply brief in the case. Respondent copied her client, Ms. DeParedes, on the email. . . .

. . . .

[5] In *Investor Trustee Services, LLC v. PNC Bank Nat'l Ass'n,* Respondent admitted that on June 23, 2016, during the period of Respondent's suspension, she sent an email to opposing counsel, Kimberly Hopkins, stating that Respondent was contacting Ms. Hopkins on behalf of attorney Andrea Roebuck who was retained and would be filing a notice of appearance in the case. Respondent's June 23, 2016, email asked Ms. Hopkins if she would agree to Ms. Roebuck filing a motion for reinstatement of the case. The docket shows that Ms. Roebuck filed a notice of appearance and motion for reinstatement on June 23, 2016, which was denied on July 7, 2016. In fact, the docket shows that nothing further happened in the appeal until Respondent filed a notice of appearance on July 21, 2016, which only provides service to opposing counsel. Ms. Roebuck's appearance and filing of the motion for reinstatement were merely placeholders until Respondent's suspension ended.

[6] In *Wells Fargo Bank v. Reed*, Respondent represented Mealy and Betty Jo Reed. In this case, Respondent inappropriately contacted opposing counsel, Ms. Anthousis, and engaged in the practice of law during the period of her suspension by providing legal services to her clients including representing the clients' interests in getting a loan modification, and providing legal advice regarding what the clients needed to do to finalize their loan modification. On June 2, 2016, Respondent sent an email to opposing counsel regarding Mr. Reed providing proof of delivery of his April payment to Wells Fargo, but that the payment had not been cashed. Respondent copied her client on the June 2, 2016, email. On June 13, 2016, Respondent sent an email to opposing counsel stating that the Reeds were never provided a permanent modification agreement by the lender to sign, and that Respondent and the client had been requesting the agreement for some time. Respondent copied her client on the June 13, 2016,

Lastly, the referee found facts pertaining to her recommendation that

Bosecker was guilty of violating Bar Rule 4-8.4(c), as follows:

> Respondent admitted that on June 13, 2016, Respondent filed a Motion for Extension of Time to File Affidavit of Providing Suspension Notice, stating that Respondent had sent out the required suspension notices but needed additional time to finalize the list of names and addresses required to be attached to the Affidavit, and requesting an extension until June 17, 2016, to furnish her Rule 3-5.1 sworn affidavit to The Florida Bar. TFB Exh. 6. However, on June 14, 2016, and June 16, 2016, Respondent sent out the required suspension notice to her clients, opposing counsel, and the court in at least two (2) cases. TFB Exhs. 7, 20e. Respondent misrepresented in her motion filed on June 13, 2016, that she had sent out the required suspension notices. Respondent knowingly made a misrepresentation and never corrected her misstatement to the Court. Furthermore, Respondent engaged in deception and dishonesty by failing to timely inform her clients, opposing counsel, and the courts of her suspension. Although Respondent elected to start her suspension early, she waited for weeks before sending out the required notices. In several of the cases addressed at the final hearing, Respondent's clients were not given prior notice of suspension in order to protect their own interests. Moreover, Respondent continued to communicate with opposing counsel and the courts in her cases without notifying them that she was suspended.

**The Referee's Recommended Sanction.** In determining the appropriate sanction

to recommend, the referee first considered the following Florida Standards for

---

email. On June 15, 2016, opposing counsel's assistant sent Respondent loan modification documents for the borrower to sign. Respondent thanked opposing counsel's assistant by email also on June 15, 2016. The client was copied on both emails. Ms. Anthousis testified that she believed Respondent was representing the Reeds during this time.

Imposing Lawyer Sanctions: 3.0 (Generally); 4.61 ("Disbarment is appropriate when a lawyer knowingly or intentionally deceives a client with the intent to benefit the lawyer or another regardless of injury or potential injury to the client."); 6.11 ("Disbarment is appropriate when a lawyer: (a) with the intent to deceive the court, knowingly makes a false statement or submits a false document; or (b) improperly withholds material information, and causes serious or potentially serious injury to a party or causes a significant or potentially significant adverse effect on the legal proceeding."); 7.1 ("Disbarment is appropriate when a lawyer intentionally engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system."); and 8.1 ("Disbarment is appropriate when a lawyer: (a) intentionally violates the terms of a prior disciplinary order and such violation causes injury to a client, the public, the legal system, or the profession; or (b) has been suspended for the same or similar misconduct, and intentionally engages in further similar acts of misconduct.").

Additionally, the referee found five aggravating factors under Florida Standard for Imposing Lawyer Sanctions 9.22, including the following: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (d) multiple offenses; (g) refusal to acknowledge wrongful nature of conduct; and (i) substantial experience in the practice of law. The referee found that the mitigating circumstances under

- 12 -

Florida Standard for Imposing Lawyer Sanctions 9.32, that Bosecker argued for, did not exist.

## ANALYSIS

**Rule Violations**

The Court's review of the referee's findings of fact as to each rule violation is limited, and if a referee's findings of fact are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee. *Fla. Bar v. Frederick*, 756 So. 2d 79, 86 (Fla. 2000); *see Fla. Bar v. Jordan*, 705 So. 2d 1387, 1390 (Fla. 1998). Moreover, "[t]he referee is in a unique position to assess the credibility of witnesses, and his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect." *Fla. Bar v. Tobkin*, 944 So. 2d 219, 224 (Fla. 2006) (quoting *Fla. Bar v. Thomas*, 582 So. 2d 1177, 1178 (Fla. 1991)). As to the recommendations of guilt, the Court has stated that the referee's factual findings must be sufficient under the applicable rules to support the recommendations. *See Fla. Bar v. Shoureas*, 913 So. 2d 554, 557-58 (Fla. 2005). Here, the referee found Bosecker guilty of violating Bar Rules 3-5.1(e), 3-5.1(h), 3-6.1(c), and 4-8.4(c), which are discussed below in turn.

*Bar Rule 3-5.1(e) (Suspension).* With regard to Bar Rule 3-5.1(e), the referee found that the Bar established that Bosecker had engaged in the practice of

law throughout the period of her suspension. The record evidence established, with respect to specific cases, that Bosecker continued to assist her clients during her suspension, based upon such conduct as advising her clients that she would monitor their cases and having had discussions with opposing counsel and court personnel during her suspension without advising them that she was under suspension. Bosecker also received copies of pleadings and orders filed in her clients' cases throughout her suspension because she was still attorney of record in the cases, and did not promptly notify the courts or opposing counsel of her suspension.

*Bar Rule 3-5.1(h) (Notice to Clients).* The evidence showed, and Bosecker admitted at the hearing before the referee, that, while the suspension was effective May 27, 2016, she was still furnishing copies of her suspension order to clients, opposing counsel, and courts in mid-June 2016. In addition, in seeking an extension from this Court on June 13, 2016, to file her affidavit pertaining to the suspension notices, Bosecker represented to the Court that all notices had been provided. This was a misrepresentation of fact.

*Bar Rules 3-6.1(c) (Notice of Employment Required) and 3-6.1(d)(1) (Prohibited Conduct; Direct Client Conduct).* Bosecker testified that she was working for attorneys Pellegrino and Roebuck at the time that she was suspended. While Bar Rule 3-6.1 allows for attorneys under suspension or disbarment to

perform services that may be ethically performed by nonlawyers, notice is required pursuant to Bar Rule 3-6.1(c). Specifically, Bar Rule 3-6.1(c) requires that "[b]efore employment commences, the entity must provide The Florida Bar with a notice of employment and a detailed description of the intended services to be provided by the individual subject to this rule." While Bosecker admitted that no such notice was provided to the Bar, it appears that the hiring entity is responsible for providing the notice and therefore, Bosecker is not in violation Bar Rule 3-6.1(c) under these circumstances.

However, Bar Rule 3-6.1(d)(1) prohibits suspended or former lawyers employed by attorneys from having direct contact with any client. In this case, the referee found numerous instances in which Bosecker had violated that rule.

***Bar Rule 4-8.4(c) (A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).*** As previously indicated, Bosecker engaged in misrepresentation when she advised the Court on June 13, 2016, that she had notified all of her clients, opposing counsel, and the courts of her suspension. Bosecker was also dishonest in failing to promptly notify her clients, opposing counsel, and the courts of her suspension. Although Bosecker argues that she was merely mistaken and did not have the intent to deceive, her actions demonstrate otherwise.

Based upon the foregoing, we approve the referee's findings of fact and

recommendations as to guilt pertaining to the violations of Bar Rules 3-5.1(e), 3-5.1(h), 3-6.1(d)(1), and 4-8.4(c). However, we disapprove the referee's recommendation that Bosecker violated Bar Rule 3-6.1(c).

**Admissibility of Evidence**

With regard to the admissibility of evidence in a Bar proceeding, "a referee has wide latitude to admit or exclude evidence." *Tobkin*, 944 So. 2d at 224. Because Bar disciplinary proceedings are neither civil nor criminal, but are quasi-judicial, the rules of evidence are not binding upon the referee. *Fla. Bar v. Shankman*, 41 So. 3d 166, 169 (Fla. 2010). Furthermore, a referee may consider any evidence that is deemed relevant in determining a factual question. *Fla. Bar v. Fredericks*, 731 So. 2d 1249, 1251 (Fla. 1999). In addition, a referee's decision regarding the admissibility of evidence will only be disturbed on review upon an abuse of discretion. *Fla. Bar v. D'Ambrosio*, 25 So. 3d 1209, 1215 (Fla. 2009).

Bosecker argues that before the referee, the Bar improperly presented evidence and testimony from attorney Julie Anthousis pertaining to "the Mealy and Betty Reed loan modification," and that the referee should not have heard or considered the claim because it was not included in the Bar's petition. Bosecker further contends that the referee should have granted her request to submit evidence in response to the Bar's allegations.

In response, the Bar argues that the referee properly considered "uncharged conduct . . . that was within the scope of the specific allegations in the Bar's Petition." The Bar explains that it filed its Final Witness List disclosing Ms. Anthousis as a witness in the case, and filed its Final Exhibit List showing several documents related to *Wells Fargo Bank v. Reed* as exhibits. Counsel for Bosecker objected to the introduction of the exhibit as outside the scope of the pleadings. The referee overruled Bosecker's objection, following argument by the Bar that the evidence was relevant to the guilt phase and was within the scope of the Bar's allegations of misconduct.

Here, the referee did not abuse her discretion in admitting the testimony and evidence relating to Bosecker's actions with regard to the *Reed* case. Rather, the evidence was relevant because the Bar was seeking contempt and disbarment based upon Bosecker's misconduct in practicing law while under suspension, and the *Reed* case was one more instance of such misconduct. Moreover, the referee properly excluded Bosecker's evidence in response, on the basis that she sought to submit evidence at the end of the hearing that had not previously been disclosed to the Bar.

Bosecker also argues that the referee erred in denying her motion to reopen evidence to admit additional client letters. Without further argument or proof, Bosecker contends that the referee was biased against her. The facts underlying

this claim are as follows. The Case Management Order in this case, entered on January 3, 2017, indicated that April 7, 2017, was the deadline for the disclosure of witnesses and exhibits. Bosecker received the additional mitigation letters after the April 27-28, 2017, final hearing. Because the parties had been put on notice of the date by which evidence or witnesses had to be disclosed, Bosecker did not comply with the Case Management Order, and she did not seek to introduce the two mitigation letters before the close of the evidence, we conclude that the referee did not abuse her discretion in not admitting the additional mitigating evidence.

**Discipline**

In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is the Court's responsibility to order the appropriate sanction. *See Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989); *see also* art. V, § 15, Fla. Const. However, generally speaking this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. *See Fla. Bar v. Temmer*, 753 So. 2d 555, 558 (Fla. 1999). In addition, the Court views cumulative misconduct more seriously than an isolated instance of misconduct, and cumulative misconduct of a similar nature warrants an even more severe discipline than might dissimilar conduct. *Fla. Bar v. Walkden*, 950 So. 2d 407, 410 (Fla. 2007).

Moreover, in imposing a sanction, the Court considers the following factors: "a) the duty violated; b) the lawyer's mental state; c) the potential or actual injury caused by the lawyer's misconduct; and d) the existence of aggravating and mitigating factors." Fla. Stds. Imposing Law. Sancs. 3.0.

Here, the referee found the following Standards applied: 3.0 (Generally); 4.61 ("Disbarment is appropriate when a lawyer knowingly or intentionally deceives a client with the intent to benefit the lawyer or another regardless of injury or potential injury to the client."); 6.11 ("Disbarment is appropriate when a lawyer: (a) with the intent to deceive the court, knowingly makes a false statement or submits a false document; or, (b) improperly withholds material information, and causes serious or potentially serious injury to a party or causes a significant or potentially significant adverse effect on the legal proceeding."); 7.1 ("Disbarment is appropriate when a lawyer intentionally engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system."); and 8.1 ("Disbarment is appropriate when a lawyer: (a) intentionally violates the terms of a prior disciplinary order and such violation causes injury to a client, the public, the legal system, or the profession; or (b) has been suspended for the same or similar misconduct, and intentionally engages in further similar acts of misconduct."). While Bosecker argues that these standards

- 19 -

should not apply, her argument is based solely upon her own interpretation of the facts from her own testimony, and contrary to the referee's findings.

Next, the referee found under Standard 9.22 the following factors in aggravation: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (d) multiple offenses; (g) refusal to acknowledge wrongful nature of conduct; and (i) substantial experience in the practice of law. "A referee's findings in aggravation carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record." *Fla. Bar v. Ticktin*, 14 So. 3d 928, 937 (Fla. 2009). Bosecker has not made this showing. Instead, she argues her position with regard to the aggravating factors, and ignores the facts as found by the referee. "Because the referee is in the best position to judge the credibility of the witnesses, we defer to the referee's assessment." *Fla. Bar v. Forrester*, 916 So. 2d 647, 652 (Fla. 2005). The evidence before the referee readily supports her findings in aggravation. In addition, the referee found that the mitigating circumstances under Standard 9.32 that Bosecker argued for did not exist. "A referee's decision not to find that a mitigating or aggravating factor applies also carries a presumption of correctness and will not be disturbed unless clearly erroneous or without support in the record." *Fla. Bar v. Varner*, 992 So. 2d 224, 230 (Fla. 2008). Here, Bosecker argues that the referee erroneously failed to find Standards 9.32(e) (full and free disclosure to disciplinary board or cooperative attitude toward proceedings),

- 20 -

9.32(g) (character or reputation) and 9.32(l) (remorse). However, "[t]he fact that there is some evidence in the record to support a finding that a mitigating factor might apply does not mean that the referee should have necessarily found it applicable." *Fla. Bar v. Herman*, 8 So. 3d 1100, 1106 (Fla. 2009).

Finally, the referee cited and discussed numerous cases in support of her recommendation of disbarment. For example, the referee cited *Florida Bar v. Brown*, 635 So. 2d 13, 13-14 (Fla. 1994), for the proposition that the presumptive penalty for a violation of a prior disciplinary order is disbarment, absent strong extenuating circumstances. In addition, *Florida Bar v. Bern*, 425 So. 2d 526, 528 (Fla. 1982), provides in pertinent part that "[i]n rendering discipline, this Court considers the respondent's previous disciplinary history and increases the discipline where appropriate." Here, Bosecker was found to have practiced law while under suspension. Cases relied upon and supporting disbarment for such misconduct include *Florida Bar v. Norkin*, 183 So. 3d 1018 (Fla. 2015); *Florida Bar v. Lobasz*, 64 So. 3d 1167, 1173 (Fla. 2011); *D'Ambrosio*, 25 So. 3d at 1220; and *Florida Bar v. Greene*, 589 So. 2d 281, 282-83 (Fla. 1991). Additional cases supporting disbarment for continuing to practice law while under suspension include *Forrester*, 916 So. 2d at 654–55, and *The Florida Bar v. Rood*, 678 So. 2d 1277, 1278 (Fla. 1996).

Lastly, Bosecker argues that "[t]he rules treat suspended attorneys that are working as a legal assistant differently than individuals who are not lawyers and working as legal assistants," and that as a result, her equal protection rights were violated. The Bar disagrees, pointing out that Bosecker is not a nonlawyer, and as such, is subject to the Bar Rules. One such prohibition is that a suspended attorney shall not engage in direct client contact with clients. Bosecker violated that prohibition. Contrary to Bosecker's belief, there is no constitutional right to practice law; rather, it is a privilege to which the Court has exclusive jurisdiction under the Florida Constitution to oversee. Based upon this Court's exclusive jurisdiction, we have "the inherent power and duty to prescribe standards of conduct for lawyers, to determine what constitutes grounds for discipline of lawyers, to discipline for cause attorneys admitted to practice law in Florida, and to revoke the license of every lawyer whose unfitness to practice law has been duly established." R. Regulating the Fla. Bar 3-1.2. Having violated the Bar Rules 3-5.1(e), 3-5.1(h), and 4-8.4(c)—i.e, having failed to provide notice to her clients and the courts where she had cases pending that she was under suspension, being in direct contact with clients and judicial staff on behalf of her clients pertaining to those cases, holding herself out to be authorized to practice law, and then continuing to act on behalf of her clients without acknowledging that she was no longer so authorized to act—Bosecker can hardly claim that she acted only as any

- 22 -

paralegal or legal assistant would do. Based upon the foregoing, we approve of the referee's report in part on the issue of guilt and approve the referee's report on the issue of discipline.

## CONCLUSION

Accordingly, Kelley Andrea Bosecker is hereby disbarred from the practice of law in the State of Florida. Because Bosecker is currently under suspension, the disbarment is effective immediately. Bosecker shall fully comply with Rule Regulating the Florida Bar 3-5.1(h).

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Kelley Andrea Bosecker, in the amount of $3,841.03, for which sum let execution issue.

It is so ordered.

CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and LAWSON, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS DISBARMENT.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Tallahassee, Florida, Chardean Mavis Hill and Katrina S. Brown, Bar Counsel, Tampa, Florida, and Adria E. Quintela, Staff Counsel, The Florida Bar, Sunrise, Florida,

for Complainant

Kelley Andrea Bosecker, pro se, St. Petersburg, Florida,

for Respondent